❏ Original          ❏ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>Information about the location of the cellular telephones assigned<br>International Mobile Subscriber Identity (IMSI) 311480680692996<br>(the "Target Cell Phone"), whose service provider is Verizon<br>Cellular, as further described in Attachment A | )<br>)<br>)<br>)<br>)<br>)<br>)<br>Case No.23-832M(NJ)<br>Matter No. 2022R00039 |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 1/31/2023 _____ *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Hon. Nancy Joseph _____ .
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for _____ days *(not to exceed 30)*   ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued: 1/17/2023 @ 9:42a.m.

_____
*Judge's signature*

City and state:   Milwaukee, Wisconsin

Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**
**Property to Be Searched**
**Matter No. 2022R00039**

1.  Records and information associated with the cellular devices assigned International Mobile Subscriber Identity (IMSI) 311480680692996, (referred to herein and in Attachment B as "the **Target Cell Phone**"), that is in the custody or control of Verizon Cellular (referred to herein and in Attachment B as the "Service Provider"), a wireless communications service provider that is headquartered at 1095 Avenue of the Americas; New York, NY. 10036.

2.  Information about the location of **Target Cell Phone**, that is within the possession, custody, or control of Verizon Cellular.

3.  **Target Cell Phone**.

**ATTACHMENT B**
**Particular Things to be Seized**
**Matter No. 2022R00039**

**I.     Information to be Disclosed by the Service Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a. The following subscriber and historical information about the customers or subscribers associated with **Target Cell Phone** for the time period from December 27, 2022, to present:

    i.   Assigned call number;
    ii.  Names (including subscriber names, user names, and screen names);
    iii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

    iv.  Local and long-distance telephone connection records;
    v.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

    vi.  Length of service (including start date) and types of service utilized;
    vii. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

    viii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

    ix.  Means and source of payment for such service (including any credit card or bank account number) and billing records; and

2

x. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the **Target Cell Phone** including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received).

b. Information associated with each communication to and from the **Target Cell Phone** for a period of 30 days from the date of this warrant, including:

i. Assigned call number;

ii. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

iii. Source and destination telephone numbers;

iv. Date, time, and duration of communication; and

v. All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e., faces of the towers) to which the **Target Cell Phone** will connect at the beginning and end of each communication.

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the **Target Cell Phone**.

c. Information about the location of the **Target Cell Phone** for a period of 30 days, during all times of day and night. "Information about the location of Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the

the location of the **Target Cell Phone** on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence and instrumentalities of violations of money laundering, in violation of Title 18, United States Code, Section 1956(a)(1); use of a communication device in furtherance of drug trafficking, in violation of Title 21, United States Code, Section 843; and illegal possession and distribution of controlled substances and conspiracy to do the same, in violation of and Title 21, Untied State Code Sections 841 and 846 involving James A. DAVIS, LaJuan J. GRAHAM, Juiquin PINKARD and Brooke DOUGHTY and other unknown individuals since August 1, 2021.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| In the Matter of the Search of | ) | |
|---|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.23-832M(NJ) |
| Information about the location of the cellular telephones assigned International Mobile Subscriber Identity (IMSI) 311480680692996 (the "Target Cell Phone"), whose service provider is Verizon Cellular, as further described in Attachment A | ) ) ) ) | Matter No. 2022R00039 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§§ 841(a)(1); 846; & 843 | Possession and distribution of controlled substances; conspiracy to possess and distribute controlled substances; Use of a communication device in furtherance of |
| 18 U.S.C. § 1956(a)(1) | drug trafficking; and Money laundering. |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
ALEX OTOOLE (Affiliate) Digitally signed by ALEX OTOOLE (Affiliate) Date: 2023.01.13 13:00:32 -05'00'

*Applicant's signature*

DEA TFO Alex O'Toole

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

telephone _____ *(specify reliable electronic means)*.

Date: 1/17/2023

_____
*Judge's signature*

City and state: Milwaukee, Wisconsin

Honorable Nancy Joseph, U.S. Magistrate Judge

*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
## <u>AN APPLICATION FOR A SEARCH WARRANT</u>
### <u>MATTER NO. 2022R00039</u>

I, Alex O'Toole, being first duly sworn, hereby depose and state as follows:

## I.    INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for an extension of a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for information about the location of the cellular telephones assigned International Mobile Subscriber Identity (IMSI) 311480680692996 (the "**Target Cell Phone**").  The service provider for the **Target Cell Phone** is Verizon Cellular ("Service Provider"), a wireless telephone service provider headquartered at 1095 Avenue of the Americas; New York, NY. 10036. The **Target Cell Phone** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.      In this application, the United States seeks (1) historical cell-site location information; (2) historical precision location information; (3) prospective, real-time cell-site location information; (4) prospective, real-time precision location information (i.e., E-911 Phase II data and GPS); and (5) subscriber information and other historic non-content records and information.

3.      As described in further detail below, case agents have obtained several federal search warrants for authorizing electronic surveillance of James A. DAVIS' cell phone numbers including, (262) 888-0716, (262) 888-3327, (414) 403-8055, and (262) 278-2746.  Information obtained when the warrants have been successfully executed, demonstrate DAVIS' ongoing conduct with the drug trafficking organization as described in detail below.  Unfortunately, during the investigation into this drug trafficking organization, DAVIS has changed his cell phone number

2

often, making the search warrants ineffective. Based on my training and experience, this frequent changing of telephone numbers is consistent with drug trafficker's attempts to evade law enforcement. As described in more detail below, though DAVIS has changed his telephone number through this investigation, the service provider, IMEI number 350879900298541, and IMSI number 311480680692996 for DAVIS' cell phone numbers has stayed the same.

4.      I now seek a warrant for information about the location of DAVIS' new cellular telephone using IMSI number 311480680692996.

5.      I further request that the Court order that the location information requested applies to any other call numbers subsequently assigned to the cellular device assigned IMSI 311480680692996 **(Target Cell Phone)**. In the event that the call number assigned to **Target Cell Phone** is changed by the subscriber or customer, I request that the Court order the Service Provider to provide case agents with that new telephone number.

6.      Because this warrant application seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), I also make this affidavit in support of an application by the United States of America for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the **Target Cell Phone**.

7.      I am a Task Force Office with the Drug Enforcement Administration, (DEA) and have been since January 2022. Before that, I was employed as a deputy sheriff with the Waukesha County Sheriff Office (WKSO) in Waukesha, Wisconsin, where I spent the last 5 years as a Detective in our detective bureau with the focus on financial and major crimes. During my tenure

as a police officer, he has been involved in multiple drug related investigations to include but not limited to sale, distribution, and Len bias homicides. As a member of DEA, I worked investigations directly in the City of Milwaukee and the State of Wisconsin as well as the entire United States based upon the direction of the investigations that arise through the Milwaukee District Office (MDO) of the DEA.

8.     As a federal law enforcement officer, I have participated in the investigation of narcotic related offenses, resulting in the prosecution and conviction of numerous individuals and the seizure of illegal drugs, weapons, stolen property, United States currency, and other evidence of criminal activity. As a narcotics investigator, I have interviewed many individuals involved in drug trafficking and have obtained information from them regarding the acquisition, sale, importation, manufacturing, and distribution of controlled substances. Through my training and experience, he is familiar with the actions, habits, traits, methods, and terminology used by the traffickers and abusers of controlled substances. I have participated in all aspects of drug investigations including physical surveillance, execution of search warrants, undercover transactions, court ordered wiretaps, analysis of phone records, analysis of electronical devices, financial records informant handling and the arrest of numerous drug traffickers. I have authored many search warrants during his tenure as a law enforcement officer. I have also spoken on numerous occasions with other experienced narcotics investigators, both foreign and domestic, concerning the methods and practices of drug traffickers and money launderers. Furthermore, I have attended training courses, which specialized in the investigation of drug trafficking and money laundering. Through these investigations, training and experience, and conversations with other law enforcement personnel, I have become familiar with the methods used by drug traffickers to manufacture, smuggle, safeguard, and distribute narcotics, and to collect and launder trafficking

– derived proceeds. I am aware of the methods employed by major narcotics organizations to thwart any investigation of their illegal activity.

9.     Base on my training, experience, as well as information relayed to him during the course of his official duties, he knows that a significant percentage of controlled substances, specifically marijuana, cocaine, heroin, fentanyl and methamphetamine, imported into the United States comes from Mexico and enters the domestic market at various points along the southwest borders of the United States, because Mexican cartels control the transportation, sale, and importation of marijuana, cocaine, heroin, fentanyl, and methamphetamine into the United States.

10.     Based on my training, experience, and conversations with other law enforcement officers, he knows that the distributors of marijuana, cocaine, heroin, fentanyl, and methamphetamine as well as other controlled substances, often used cellular and landlines telephones. Additionally, I know that drug traffickers often change their phone numbers and cellular devices on frequent basis in an attempt to thwart law enforcement from tracking their phones and to conceal their identity. I know that these individuals often use code words to discuss controlled substances and methods of concealing controlled substances while talking on the telephone. I know drug traffickers often conduct extensive counter – surveillance to avoid law enforcement detection.

11.     Based on my training and experience, he knows that narcotics – trafficking and money laundering organizations routinely used several operational techniques to sustain their illegal enterprises. There practices are designed and implemented to achieve two paramount goals: First, the successful facilitation of organization 's illegal activities including the importation and distribution of controlled substances and the subsequent repatriation of the proceeds of that illegal activity; and second, the minimization of the exposure of the coconspirators, particularly those

operating in leadership roles, from investigations and prosecution by law enforcement. More specifically, based on training and experience, I know the following:

    a.  Sophisticated drug trafficking organizations routinely compartmentalize their illegal operations. The compartmentalization of the operations reduces the amount of knowledge possessed by each member of the organization. This method of operation effectively minimizes the potential damage an individual cooperating with law enforcement could inflict on the organization and further reduces the adverse impact of the particular law enforcement actions against the organization.

    b.  Members of these organizations routinely used communications facilities, such as cellular telephones to communicate directions and information about the organization's illegal activities to other organization members.

    c.  During the course of these telephonic communications, organization members routinely use coded references and encryption in an effort to elude law enforcement detection.

    d.  The communication of time sensitive information is critical to the successful conduct of these organizations' illegal activities. The critical nature of this information stems from the necessity of the organization's leadership to provide direction from the importation and distribution of narcotics and subsequent laundering of the proceeds of those activities.

    e.  Drug traffickers and money launderers associated with them often confine their illegal telephonic communications to long – trusted organizational members and high – level narcotics traffickers in an attempt to evade law enforcement and circumvent narcotics investigations; and

    f.  Drug traffickers routinely use fictitious names or other individuals to register pagers, telephones, vehicles, real property, and utility services to avoid detections from law enforcement.

    g.  Drug traffickers used what is refer to as a "stash house" to stow illegal items such as illegal controlled substance, packaging paraphernalia, illegal firearms, ledgers, and US currency. Often times members of drug trafficking organizations have to make stops at the stash locations to pick up illegal controlled substance to deliver. Multiple stops can be made in a day at these locations. This is done so the trafficker does not have to carry additional illegal controlled substances in their vehicle or person. This protects the trafficker from law enforcement investigations as they do not have illegal controlled substances on them after the delivery is made. Often time the US currency will be transported after the delivery to the stash house to protect against law enforcement investigation and rival drug trafficker's robbery crews.

12.     I have participated in numerous investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these devices. I have also participated in investigations involving the use of historical and prospective location information to identify targets, map patterns of travel, corroborate other evidence, and apprehend persons to be arrested. On numerous occasions, this electronic evidence has provided proof of the crimes being investigated and corroborated information already known or suspected by law enforcement. During the course of my investigations, I have regularly used electronic evidence relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of co-conspirators.

13.     The facts in this affidavit come from my personal observations, training, experience, and information obtained from other agents and witnesses.  Throughout this affidavit reference will be made to case agents.  Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation and whom I have had regular contact regarding this investigation.  This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

14.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that possible crimes of money laundering, in violation of Title 18, United States Code, Section 1956(a)(1); use of a communication device in furtherance of drug trafficking, in violation of Title 21, United States Code, Section 843; distribution and possession with intent to distribute controlled substances and conspiracy to distribute and possess with the intent to distribute controlled substances, violations of Title 21, United States Code, Sections 841 and 846, have been committed by James DAVIS, Juiquin PINKARD. LaJuan GRAHAM and Brooke DOUGHTY and other known and unidentified subjects.

## II.    JURISDICTION

15.    The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## III.    PROBABLE CAUSE

### A.  BACKGROUND AND DEBRIEF OF CONFIDENTIAL SOURCE

13.    Beginning in December 2021, DEA Special Agents and TFO and the Racine Police Department, hereinafter referred to as "case agents," began investigating a drug trafficking organization (DTO) operating in the Eastern District of Wisconsin (WI) which involved James A. DAVIS, LaJuan J. GRAHAM, Juiquin PINKARD, Brooke DOUGHTY and other identified and unidentified subjects. Through confidential sources, undercover controlled buys, physical surveillance, electronic surveillance case agents determined the DTO used multiple phones for communication among themselves, shared a drug customer phone among its members at times, used and shared rental vehicles, and launder drug proceeds through financial institutions and casino.

14**.**    In December 2021, I was contacted by Detective David Rybarik of the Racine Police Department.  Detective Rybarik is assigned to the Special Investigations Unit (SIU) – Gang Enforcement.  Detective Rybarik stated he received information from a confidential source (CS) indicating that since at least August 2021 James A. DAVIS, DOB: XX/XX/1983, was trafficking heroin in Milwaukee and Racine County, in the Eastern District of Wisconsin.

15.    Detective Rybarik stated CS provided information related to James A. DAVIS.  CS stated DAVIS lives in Milwaukee, Wisconsin.  CS stated he/she could purchase large amounts of heroin directly from DAVIS.  CS did not know specifically where DAVIS resides in Milwaukee,

Wisconsin. CS stated DAVIS drove a white colored Audi Q7. Further CS stated often DAVIS will conduct his illegal drug transactions with the use of rental vehicles.

16.     CS information is credible and reliable because CS is providing information based on CS personal knowledge and observations and said information has been corroborated by other sources during this investigation and supported by surveillance and call detail records. CS is cooperating for consideration on several Bail Jumping, Operating While Intoxicated (OWI) and Operating While Revoked (OAR) offenses. CS has a felony conviction for Manufacturing / Deliver Heroin and multiple misdemeanor convictions for Resisting / Obstructing an Officer, OWI, and shoplifting.

### B.  PRIMARY CONSPIRATORS AND CONTROLLED BUYS WITH DTO

17.     Generally, during the below listed controlled purchases of controlled substances, the CS and/or undercover agent (UC) placed a recorded phone call or text messages to the target, captured audio and video of the controlled purchase, was followed to and from the controlled purchase location and the above evidence and statements reviewed and verified by law enforcement. Further, prior to the controlled purchase and following the controlled purchases, case agents searched CS and CS's vehicle and no drugs, money, or weapons were located by case agents. Additionally, the controlled substances were all weighed and tested positive for the listed substance using Nark II test kits following the printed instructions and the targets were identified by CS and/or UC through driver's license photographs.

### a.  First Undercover Transaction with DAVIS - January 14, 2022

18.     Based on CS indicating he/she could purchase heroin from DAVIS, members of DEA and members from Racine Police Department – SIU conducted a controlled purchase of 25 grams of heroin from DAVIS.

19.     The controlled purchased took place on January 14, 2022.  During the operation CS contacted DAVIS at telephone number (262) 888-0716 to coordinate the controlled purchase of 25 grams of heroin for $1750.  The location of the buy was initial scheduled to occur in Racine, Wisconsin.  DAVIS sent CS a text message from telephone (262) 888-0716 requesting CS travel to 2030 North 31st Street, Milwaukee, WI 53208 to pick up the heroin. The address of 2030 North 31st Street is a tire shop which listed address is 2028 North 31st Street, Milwaukee, WI on the Milwaukee City Assessor website.  The Milwaukee City Assessor website does not have a valid listing for the address of 2030 North 31st Street, Milwaukee, WI.

20.     Once at 2028 North 31st Street, CS made physical contact with DAVIS inside CS's vehicle.  DAVIS informed CS "his guy" was on his way with the heroin.  After several minutes a 2013 Hyundai Sonata with Wisconsin license plate AHG4155 arrived.  DAVIS approached and entered the vehicle.  After a short period of time DAVIS exited the vehicle and returned to CS's vehicle with the heroin.  DAVIS gave CS the heroin and CS gave DAVIS the $1750 of buy money. DAVIS exited CS's vehicle and left the area and turned over the suspected heroin to the assisting case agent.

21.     Case agents reviewed Wisconsin DOT records for the Hyundai Sonata and learned the vehicle was registered to Shakayla Prince of 4711 North 89th Street, Milwaukee, WI, which is further described in this affidavit as Juiquin PINKARD's residence.

22.     Case agents reviewed call detail records of DAVIS' telephone (262) 888-0716 during the January 14, 2022, drug transaction arrangements and purchase, between 11:51 a.m. and 2:06 p.m.  Case agents observed DAVIS contact telephone (414) 840-9759 twelve times during this time frame.  During the undercover controlled buy with DAVIS and LaJuan J. GRAHAM DOB XX/XX1983 on January 27, 2022, described in subsection b of this section, GRAHAM provided telephone (414) 840-9759 to contact for future drug purchases.

23.     The controlled substance was later tested by DEA Crime Lab and weighed 25 grams and tested positive for fentanyl and heroin.

24.     During the week after the controlled purchase of fentanyl, DAVIS and CS had text conversations.  DAVIS was under the impression that CS was purchasing the heroin for a friend.  Based on DAVIS impression DAVIS told CS that he could introduce "his guy" to CS's friend so they could deal directly.  Due to the information a second controlled buy was scheduled in which case agents were able to introduce an undercover agent (UC).

**b. Second Undercover Transaction with DAVIS and GRAHAM and Counter Surveillance with PINKARD – January 27, 2022**

25.     The second controlled buy was scheduled for January 27, 2022.  CS contacted DAVIS' telephone (262) 888-0716.  DAVIS agreed to travel to Racine, Wisconsin for the drug transaction and indicated he would bring his supplier to the deal.  The deal was set to purchase 50 grams of heroin for $3500.  CS traveled with UC in an undercover police vehicle to conduct the deal.

26.     Upon UC and CS arriving at the meet location in Racine, WI, DAVIS, and GRAHAM entered UC's vehicle.  GRANHAM was identified as by using a driver's license photo from Wisconsin Department of Transportation (DOT).  While in UC's vehicle, CS introduced UC to DAVIS and DAVIS introduced GRAHAM as "LG".  GRAHAM passed a bag to UC containing the suspected heroin.  After UC inspected the suspected heroin UC passed $3500 in buy money directly to GRAHAM.  GRAHAM and UC had a short conversation in which they exchanged telephone numbers.  GRAHAM provided UC his telephone number of (414) 840-9759.

27.     The controlled substance was later tested by DEA Crime Lab and weighed 49.9 grams and tested positive for fentanyl.

28.     Following the undercover controlled buy, case agents attempted to conduct post surveillance of DAVIS and GRAHAM as they left the meeting spot together in a black Ford Fusion with Florida license plate 88ABGR.  During the post surveillance the vehicle was lost.  The registration on the vehicle used by DAVIS and GRAHAM on January 27, 2022, listed to Avis / Budget rental company. Records from Avis /Budget indicated GRAHAM rented the Ford Fusion on January 24, 2022.

29.     Also, during the undercover controlled buy, case agents conducted surveillance in the parking lot where the buy occurred.  Case agents observed a silver Honda with Illinois registration CU 21390 circling the parking lot.   Once the undercover controlled buy was completed, the Honda followed DAVIS and GRAHAM from the location.  An unidentified black male was operating the silver Honda.  Case agents later identified this black male as Juiquin PINKARD DOB XX/XX/1984 and identified PINKARD as the same person that provided UC with fentanyl in the February 10, 2022, undercover controlled drug buy described further in subsection c of this section.  Based on my training and experience regarding DTOs, PINKARD appeared to be conducting counter-surveillance for DAVIS and GRAHAM on January 27, 2022, in an attempt to identify possible law enforcement or evade law enforcement.

30.     Case agents later reviewed police reports that on January 28, 2022, the day following the undercover controlled buy, DAVIS was stopped by Caledonia Police Department. DAVIS was driving the same silver Honda with Illinois registration CU 21390, which PINKARD was driving on January 27, 2022.  Caledonia Police Officers also located a white powdery substance which later tested positive for cocaine inside the silver Honda.   As part of the investigation into DAVIS' DTO, case agents learned that GRAHAM rented the Silver Honda Accord with Illinois plates CU21390 on January 27, 2022.  Further, DAVIS provided an address of 2030 North 31st Street, Milwaukee, WI to law enforcement during this stop. As previously

noted, this address is not valid on the Milwaukee City Assessor website; however, the address of 2028 North 31st Street, Milwaukee, WI is listed and is consistent with the tire shop at the location.

31.     Case agents also reviewed the Wisconsin Circuit Court Access Website which indicated James DAVIS was charged in Racine County Court Case 2022CF216 for possession of cocaine and other felony offense from the traffic stop on January 28, 2022.  James DAVIS listed an address of 2030 North 31st Street, Milwaukee, WI on this case also.

### c. Third Undercover Transaction with PINKARD and GRAHAM – February 10, 2022

32.     On February 10, 2022, case agents conducted an undercover controlled buy for 50 grams of heroin between UC and GRAHAM.  UC verified GRAHAM's number by contacting GRAHAM's telephone (414) 840-9759 via text and phone calls to coordinate the drug purchase. UC went to a Citgo gas station located at 3929 North 49th Street, Milwaukee, WI to conduct the undercover controlled buy.  While UC waited, GRAHAM called UC using telephone (414) 840-9759**.**  GRAHAM stated that "his guy" was in the area in a silver Volkswagen.  UC observed a Volkswagen with Ohio registration HST 7153.   UC approached the Volkswagen when PINKARD, who was later identified by his DOT driver's license photo, exited the Volkswagen, and entered UC's vehicle.  PINKARD told UC he/she would be dealing with PINKARD in Milwaukee but "other dude down there".  Based on the previous undercover controlled buy from January 27, 2022, case agents and UC believed PINKARD was referring to either DAVIS and/or GRAHAM as the "other dude" if the deal took place in Racine. While in the vehicle PINKARD passed a bag to UC containing the suspected heroin and UC passed $3500 in buy money to PINKARD.

33.     The controlled substance was later tested by DEA Crime Lab and weighed 49.1 grams and tested positive for fentanyl.

34.     Following the undercover controlled buy from February 10, 2022, case agents used a database to determine the registered owner of the Volkswagen with Ohio registration HST 7153. Case agents learned the Ohio registration HST 7153 was listed to Enterprise rental company, but to a Ford vehicle not a Volkswagen.  Case agents later learned the rental company place the wrong plate on the Volkswagen.

### d.  Fourth Undercover Transaction with PINKARD – February 24, 2022

35.     On February 24, 2022, UC arranged for an undercover controlled buy for 100 grams of heroin for $6500 at 4001 North 60th Street Milwaukee, WI.  UC exchanged text messages with telephone (414) 840-9759 to arrange this controlled buy.  During the controlled buy PINKARD arrived in the silver Volkswagen with Ohio registration HST 7153, the same rental vehicle used during the controlled buy on February 10, 2022.  During the controlled buy PINKARD exited the Volkswagen and entered UC's vehicle.  PINKARD provided UC 100 grams of suspected heroin in exchange for $6500.  PINKARD then exited UC's vehicle, returned to the Volkswagen, and left the area.  Case agents attempted to follow PINKARD after the controlled buy; however, due to PINKARD's erratic driving case agent had to stop.

36.     The controlled substance was later tested by DEA Crime Lab and weighed 99 grams and tested positive for fentanyl.

37.     Following the controlled buy on February 24, 2022, PINKARD called UC from (414) 840-9759.  PINKARD told UC once PINKARD is more comfortable with UC their meeting location would be safer.  Also, during the conversation PINKARD said his "man" told him to deal with UC.  PINKARD brought up the potency of the "dope" to UC and PINKARD stated he controls the potency and wants it to be correct, so people do not die.  Further PINKARD told UC if he wants strong "dope" he can provide it, but the dope cost a little more.

38.     Based on this call from PINKARD using telephone (414) 840-9759, case agents determined the telephone (414) 840-9759 was likely the DTO's drug customer telephone and not a personal phone of one of the members.  It appeared the DTO's drug customer telephone (414) 840-9759 was being shared by members of the DTO at this point of the investigation. As the investigation processed, as described below, PINKARD began to regularly answer the DTO's drug customer telephone.

39.     On March 1, 2022, the DTO's drug customer telephone (414) 840-9759 text messaged UC and stated the DTO's drug customer telephone (414) 840-9759 was being disconnected and a new DTO's drug customer telephone (414) 587-6004 would be activated to coordinate future dealings.  Case agents used a law enforcement database which indicated the DTO's drug customer telephone (414) 587-6004 service provide was US Cellular and no subscriber information was listed, similar as the DTO's previous drug customer telephone (414) 840-9759.

40.     On March 7, 2022, UC text messaged the DTO's drug customer telephone (414) 587-6004 to arrange a controlled drug buy.  UC received a call from the DTO's drug customer telephone (414) 587-6004.  UC spoke to the caller, who UC believed was either GRAHAM or PINKARD based on prior interactions.

   **e.  Fifth Undercover Transaction with PINKARD and DOUGHTY – March 24, 2022**

41.     On March 24, 2022, case agents conducted an undercover controlled buy of 100 grams of heroin from the DTO.  UC contacted the DTO's drug customer telephone (414) 587-6004 via text message to order 100 grams of heroin.  UC sent several text messages and spoke with PINKARD several time using the DTO's drug customer telephone (414) 587-6004 to discuss a possible meet location. PINKARD initially indicated he could not meet in Racine until later in the

day but did eventually agree to meet UC sooner in Racine, WI to conduct the transaction of 100 grams of heroin for $6500.   UC believed he/she was speaking with PINKARD based on prior contacts with the DTO's drug customer telephone (414) 587-6004 and PINKARD.

42.     PINKARD contacted UC and indicated he was at the predetermined location in Racine, WI.  PINKARD told UC to contact a black Audi A4, which had a Wisconsin license plate AMK3977.  Case agents later reviewed Wisconsin DTO records which indicated the vehicle was registered to Steven Doughty, which was determined to be a relative of Brook DOUGHTY. PINKARD stated the female in the Audi A4 had the heroin.  UC located the Audi A4 and made contact.  The female was identified as Brook DOUGHTY DOB XX/XX/1995 by UC through a Wisconsin DOT photo.  DOUGHTY passed UC a cardboard / paper cup which had the suspected heroin inside.  UC gave Doughty $6500.00.

43.     The controlled substance was later tested by DEA Crime Lab and weighed 99.5 grams and tested positive for fentanyl.

44.     Prior to the undercover controlled buy, case agents conducting surveillance observed the DOUGHTY's Audi A4 at the predetermined met location.  Case agents also observed a silver Ford Taurus with extremely heavy tinted windows, which the case agents could not see inside of the vehicle.  The Ford did not display any vehicle registration.  Case agents observed the Ford follow the Audi A4 to the predetermined location.  Upon review of court authorized electronic surveillance, PINKARD's personal telephone (414) 748-5568[1] and the DTO's drug customer telephone (414) 587-6004 both showed to be in the area of the controlled buy.  Based on the previous controlled buys in which DTO members conducted counter surveillance, case agents determined PINKARD was conducting counter surveillance for DOUGHTY.

---

[1] Explanation on how the case agents identified PINKARD's telephone (414) 748-5568 is described in section II, subsection C, c.

45.    After completion of the controlled buy, the Audi A4 operated by DOUGHTY left the area and returned to Milwaukee in the area near 2720 East Edgerton Avenue, Apartment 6, Cudahy, WI. After identifying DOUGHTY, case agents review a law enforcement database which indicated DOUGHTY's residence as 2720 East Edgerton Avenue, Apartment 6, Cudahy, WI.

46.    The Ford did not immediately exit the lot, but instead it appeared to wait to see if DOUGHTY or UC was followed, which based on my training and experience would be consistent with the Ford conducting counter surveillance. After several minutes the Ford left the area. Court authorized electronic surveillance for PINKARD's telephone (414) 748-5568 and the DTO's drug customer telephone (414) 587-6004 showed both to be traveling back to Milwaukee and going towards the area of DOUGHTY'S residence, 2720 East Edgerton Avenue, Cudahy, WI. Case agents were unable to maintain direct physical surveillance of DOUGHTY and PINKARD due to failed radio communication.

47.    During the communication between UC and PINKARD using the DTO's drug costumer telephone (414) 587-6004, case agents monitored the call detail record and court authorized electronic surveillance of the DTO's drug costumer telephone (414) 587-6004 and PINKARD's telephone (414) 748-5568. The electronic surveillance showed both phones were in the same general area. Just prior to the controlled buy, PINKARD's telephone (414) 748-5568 contacted (414) 719-1574. Case agents reviewed a law enforcement databased that indicated (414) 719-1574 was a telephone associated with DOUGHTY. Court authorized electronic surveillance showed that at this time PINKARD's telephone (414) 748-5568 and the DTO's drug customer telephone (414) 587-6004 were in the area of DOUGHTY'S residence, 2720 East Edgerton Avenue, Apartment 6, Cudahy, WI.

48.    Case agents also reviewed call detail records of the DTO's drug customer telephone (414) 587-6004 during the arrangements of the controlled drug transaction. While UC was

attempting to set up the drug transaction, PINKARD indicated "his guy" would not be able to come to Racine, WI until later in the day, but later PINKARD indicated he would be able to complete this drug transaction sooner. These appeared to be consistent with communication between the DTO's drug costumer telephone (414) 587-6004 and both DAVIS's telephone (262) 888-3327[2] and GRAHAM's telephone (414) 345-7827[3] during this same time frame. Following the call by UC, the DTO's drug costumer telephone (414) 587-6004 calls DAVIS' telephone (262) 888-3327 several times. After the phone calls with DAVIS' telephone (262) 888-3327, the DTO's drug costumer telephone (414) 587-6004 called GRAHAM's telephone (414) 345-7827. During the timeframe of the coordinating and executing the controlled buy, the DTO's drug costumer telephone (414) 587-6004 made six contacts to DAVIS' telephone (262) 888-3327 and six contacts to GRAHAM's telephone (414) 345-7827. Based on my training, experience, and investigation into this DTO, these calls were consistent with PINKARD, DAVIS, and GRAHAM coordinating the drug transaction with UC.

### f. Sixth Undercover Transaction with PINKARD, DOUGHTY, and HARAMIS – June 9, 2022

49.     On June 9, 2022, case agents conducted an undercover controlled buy of 100 grams of heroin from the DTO. UC contacted the DTO's drug customer phone (414) 587-6004 via text message to order 100 grams of heroin on June 8, 2022. Through several text messages and several phone calls with PINKARD using the DTO's drug customer phone (414) 587-6004 the controlled buy was set up to take place in Racine, WI. UC determined he/she was talking to PINKARD based on prior contacts with PINKARD and the DTO's drug customer telephone (414) 587-6004.

---

[2] During the investigation, DAVIS changed his telephone number to (262) 888-3327. Explanation on how the case agents identified DAVIS' telephone number (262) 888-3327 is described in section II, subsection C, a.
[3] Explanation on how the case agents identified GRAHAM's telephone (414) 345-7827 is described in section II, subsection C, b.

50.     UC arrived at the predetermined meet location and waited.  UC was contacted by PINKARD using the DTO's drug customer telephone (414) 587-6004. PINKARD stated he was there.  At this time case agents observed a black Audi A4, with Wisconsin license plate ALY 6784 arrive at the location.  This was a different Audi A4 then Doughty used during the March 24, 2022, drug transaction.  This other Audi A4 also listed to Steven Doughty.  UC contacted the Audi. DOUGHTY was driving the Audi A4 and no one else was present.  During the contact DOUGHTY passed UC a McDonald's coffee cup with the suspected heroin inside.  UC passed DOUGHTY $6500.00.

51.     The substance was taken to the DEA Milwaukee District Office where it was weighed, and field tested.  The substance had a gross weight of 100.9 grams with packaging.  The field test showed a positive presence for heroin and fentanyl.

52.     After the controlled buy was completed case agents conducted surveillance of DOUGHTY.  DOUGHTY drove directly back to 4711 North 89th Street, Milwaukee, WI.  Based on the investigation into the DTO, case agents determined 4711 North 89th Street, Milwaukee, WI is the residence of PINKARD.

53.     Case agents conducting surveillance on the residence at 4711 North 89th Street, Milwaukee, WI.   Case agents observed DOUGHTY exit her Audi A4 and enter the front door of the 4711 North 89th Street, Milwaukee, WI.  DOUGHTY was carrying a large amount of United States currency in her hand as she entered 4711 North 89th Street, Milwaukee, WI.  Case agents believe the United States currency that DOUGHTY was in possession of was the funds recently provided by UC.

54.     Case agents continued to conduct surveillance on 4711 North 89th Street, Milwaukee, WI.  After several minutes case agents observed DOUGHTY exit the residence with a black male, that was later identified as Desmond Haramis (DOB XX/XX/1994) through a

Wisconsin DOT photo. Haramis was carrying a small child at this time. Through the investigation, case agent determined Haramis and DOUGHTY have a child in common. DOUGHTY, Haramis, and the child entered the Audi A4 and left the area. Case agents attempted to conduct further surveillance on DOUGHTY's Audi A4, but lost sight of the vehicle temporarily. During this time case agents were also conducting surveillance on DOUGHTY's residence at 2720 East Edgerton Avenue, Apartment 6, Cudahy, WI. Shortly after case agents lost sight of the Audi A4 it arrived at the parking lot of 2720 East Edgerton Avenue, Apartment 6, Cudahy, WI. Case agents observed DOUGHTY, Haramis and the child enter the building through the back door, consistent with them going to 2720 East Edgerton Avenue, Apartment 6, Cudahy, WI.

55. Case agents reviewed phone records of the DTO's drug customer telephone (414) 587-6004 from June 8, 2022, to June 9, 2022. UC made contact the DTO's drug customer telephone on June 8, 2022, at 3:32 p.m. to coordinate the controlled buy for June 9, 2022. During the conversation the controlled buy for June 9, 2022, was confirmed. After UC contacted PINKARD on the DTO's drug customer telephone (414) 587-6004, the DTO's drug customer phone (414) 587-6004 made two outgoing calls to DAVIS' telephone (262) 888-2733 and received one incoming call from DAVIS' telephone (262) 888-2733. Court authorized GPS on PINKARD's 2021 Honda CRV with Texas registration PNF5101 showed PINKARD's Honda CRV at DAVIS' residence located at 4458 North 67th Street, Milwaukee, WI after these calls were made. Based on my training, experience, and investigation into the DTO, this was consistent with PINKRD coordinating the drug transaction with DAVIS and likely picking up additional drugs for the transaction from DAVIS.

56. Case agents also reviewed call detail records from June 9, 2022, of the DTO's drug customer telephone (414) 587-6004. The DTO's drug customer telephone (414) 587-6004

contacted DAVIS' telephone (262) 888-3327 and Haramis' telephone (224) 601-4290[4] on a regular basis starting at 9:00 a.m. and going through the time of the controlled buy, with the last call around 9:15 p.m. There were seventeen direct calls between the DTO's drug customer telephone (414) 587-6004 and DAVIS' telephone (262) 888-3327 during this time frame. Based on my training and experience, members of DTO will make telephone calls with other DTO members instead of sharing text message when discussing the DTO and drug transactions to evade law enforcement later locating the communication. During this same time frame there were twelve contacts between the DTO's drug customer telephone and Haramis' telephone (224) 601-4290 with eleven of the contacts being phone calls. Again, case agents believed phone conversation were to avoid text message records of the communications.

57. On June 9, 2022, at 12:08 p.m., just prior to UC contacting the DTO's drug customer telephone (414) 587-6004, (414) 587-6004 had regular contact with DAVIS' telephone (262) 888-3327 and Haramis' telephone (224) 601-4290. Immediately, following UC contact with the DTO's drug customer telephone (414) 587-6004, (414) 587-6004 called both Haramis' telephone (224) 601-4290 and DAVIS' telephone (262) 888-3327. After calling Haramis' telephone (224) 601-4290 and DAVIS' telephone (262) 888-3327 the DTO's drug customer phone (414) 587-6004 text UC to let UC know the controlled buy could happen. Case agents believe PINKARD was managing the DTO's drug customer telephone (414) 587-6004 at this time, based on phone records showing the DTO's drug customer telephone (414) 587-6004 communicating with DAVIS' telephone (262) 888-3327and Haramis' telephone (224) 601-4290. Case agents believe the phone contacts were PINKARD coordinating the logistics of the controlled buy with DTO members.

---

[4] Explanation on how the case agents identified Haramis' telephone (224) 601-4290is described in section II, subsection C, e.

58.     Following the transaction taking place at a proximately 1:32 p.m., the DTO's drug customer phone (414) 598-6004 received two phone calls from DAVIS' telephone (262) 888-3327. There were several other incoming and outgoing calls between DAVIS' telephone (262) 888-3327 and the DTO's drug customer phone (414) 587-6004 within the two hours following the controlled buy.   The DTO's drug customer telephone (414) 598-6004 did not have any contact with Haramis' telephone (224) 601-4290 during the controlled buy.   Case agents learned Haramis was at PINKARD's residence as described above.

**g.  Seventh Undercover Transaction with PINKARD – December 20, 2022**

59.     On December 20, 2022, case agents conducted a controlled buy from the DAVIS DTO with the use of an undercover agent.   The UC contacted the DTO using the drug customer telephone 414-750-2464 and coordinated the purchase of 25 grams of heroin for $1500.

60.     Prior to the UC contacting 414-750-2464 case agents set up surveillance on multiple residence associated with the DTO.   One of the locations was 4711 North 89th Street, Milwaukee, WI (– Pinkard's residence.

61.     Once the surveillance was set up the UC contacted 414-750-2464.   Shortly after the phone contact case agent observed PINKARD arrive at 4711 North 89th Street.   PINKARD pulled up in the 2023 Mazda CX 50, black SUV, Wisconsin license plate ASE4172 (Mazda CX).   The Mazda CX is registered to PINKARD at 4711 North 89th Street, Milwaukee, WI.

62.     PINKARD was operating the vehicle and was with an individual identified as Brian Lane through DOT photo.   Both PINKARD and Lane entered 4711 North 89th Street, Milwaukee, WI through the front door and exited several minutes later and left the area in the Mazda with PINKARD driving.

63.     Once PINKARD left 4711 North 89th Street, Milwaukee, WI, 414-750-2464 contacted the UC and set up a meet location.   The UC believed he was talking to PINKARD based

on previous contacts. The UC and PINKARD agreed to meet at the Walgreens located at 7600 West Capitol Drive, Milwaukee, WI.

64. The UC responded to the location and contacted 414-750-2464 to confirm he/she was at the location. The UC believed he/she talked to PINKARD who confirmed he was on his way to the location. Approximately 10 minutes after the UC contacted PINKARD using the drug customer telephone 414-750-2464, case agents observed PINAKRD's Mazda CX arrive at the parking lot of Walgreens. PINKARD was driving the Mazda CX. Prior to contacting the UC, PINKARD made contact with an unknown male white who was also parked in the parking lot. Base on training and experience case agents believe PINKARD conducted two drug transaction at the location. The first drug transaction was with the unknown male white and the second drug transaction was with the UC.

65. After PINKARD made a short contact with the unknown male, PINKARD drove his Mazda CX around the parking lot looking for the UC. Upon seeing the UC, PINKARD parked and exited his Mazda CX. PINKARD entered the front passenger seat of the UC and passed a knotted baggie corner containing a grey chucky like substance suspected to be heroin. After passing the suspected controlled substance, the UC passed PINKARD $1500.

66. PINKARD left the area after the controlled buy in his Mazda CX. The UC left the area and was followed back to the DEA MDO by case agents.

67. Case agents weighed and tested the suspected heroin. The substance showed a pre and post weight with packaging to be 26 grams. The case agents conducted a field test of the substance using the NIK test kit per the printed instructions. The NIK test kit showed a positive presence for fentanyl, similar to past controlled substance provided by the DTO. The substance was packaged and sent the DEA laboratory for further testing.

## C. IDENTIFICATION OF TELEPHONE NUMBERS FOR DAVIS, GRAHAM, PINKARD, DOUGHTY, HARAMIS AND THE DTO'S DRUG CUSTOMER

68.     Based on my training and experience regarding DTOs, I am aware that drug traffickers usually maintain a drug customer telephone for arranging drug transaction, but then will generally use other telephones to contact members of the DTO in order to evade law enforcement. Further, based on my training and experience regarding DTOs, members of a DTO may pass the drug customer telephone among co-conspirators and maintaining separate telephone number for communicating among themselves, again in order to evade law enforcement.  These types of tactics make it important to identify possible other telephone numbers for members of the DTO, which case agents were able to determine as outlined below.  Based on the identifications of the DTO members' telephone numbers, the DTO uses multiple telephones for communication and at times passed a drug customer telephone among its members.  For example, on February 10, 2022, UC coordinated the purchase of 50 grams of fentanyl from GRAHAM on the DTO's drug customer telephone (414) 840-9759.  On February 24, 2022, UC coordinated the purchased of 100 grams of fentanyl from PINKARD using the DTO's drug customer telephone (414) 840-9759.  Further on March 24, 2022, PINKARD used his number of (414) 748-5568 to communicate with DOUGHTY and also used the DTO's newer drug customer telephone (414) 587-6004 to communicate with GRAHAM's telephone (414) 345-7827 and DAVIS's telephone (262) 888-3327.

### a. DAVIS' Telephones (262) 888-0716, (262) 888-3327, (414) 403-8055, and (262) 278-2746.

69.     During the course of the investigation DAVIS changed his cellular phone number multiple times.  Case agents are aware of at least four phone lines used by DAVIS between January 2022 and December 2022.  Case agents regularly found DAVIS' service provider was Verizon Wireless.

70. On January 14, 2022, DAVIS used telephone (262) 888-0716 to arrange the drug transaction with CS. Also on January 27, 2022, DAVIS used telephone (262) 888-0716 to arrange the drug transaction with CS and UC.

71. On February 9, 2022, Magistrate Judge Nancy Joseph authorized a federal search warrant for electronic surveillance of DAVIS' telephone of (262) 888-0716; however, when case agents served the warrant on the service provider case agents were informed that DAVIS' telephone (262) 888-0716 was terminated on February 7, 2022.

72. Case agents reviewed call detail records from the DTO's prior drug customer phone (414) 840-9759, which was provided to UC as the DTO's drug telephone by GRAHAM during the drug transaction on January 27, 2022. The DTO's drug customer telephone (414) 840-9759 was also used to set up the undercover drug transactions from February 10, 2022, and February 24, 2022. Case agents observed that between February 7, 2022, and March 3, 2022, after DAVIS dropped his prior telephone (262) 888-0716, telephone number (262) 888-3327 had 90 contacts with the DTO's drug customer telephone (414) 840-9759.

73. Case agents obtained phone records for (262) 888-3327, which indicated there was no subscriber information associated with the number and it had a service provider of Verizon Cellular, similar to DAVIS's disconnected telephone (262) 888-0716.

74. Based on the call detail records, case agents interviewed CS. On February 23, 2022, CS confirmed he/she communicated with DAVIS and DAVIS was using telephone number (262) 888-3327.

75. On March 16, 2022, Magistrate Judge William E. Duffin authorized a federal search warrant for the electronic surveillance of DAVIS' telephone number (262) 888-3327.

76. Case agents reviewed call detail records between (262) 888-3327 and the DTO's drug customer telephone (414) 587-6004, used to arrange the undercover drug transactions from

March 24, 2022, and June 9, 2022. DAVIS' telephone (262) 888-3327 and the DTO's drug customer telephone (414) 587-6004 had 555 contacts between March 15, 2022, and June 20, 2022.

77. Case agents obtained additional call detail records and determined DAVIS' telephone (262) 888-3327 was active until July 2022. On November 17, 2022, case agents confirmed with CS that DAVIS dropped telephone (262) 888-3327 and was using telephone (414) 403-8055.

78. Case agents again reviewed call detail records to confirm DAVIS's telephone (414) 403-8055. During this same time, the DTO changed the drug customer telephone to (414) 750-2464, which is further described in subsection f of this section.

79. Case agents reviewed call detail records for the DTO's drug customer phone (414) 750-2464. Between August 26, 2022, and October 3, 2022, DAVIS's telephone (414) 403-8055 contacted the DTO's drug customer telephone (414) 750-2464 104 times and DAVIS's telephone (414) 403-8055 was one of the top callers. Also, between August 26, 2022, and October 30, 2022, DAVIS's telephone (414) 403-8055 and GRAHAM's telephone (414) 345-7827 had 43 contacts.

80. DAVIS' telephone (414) 403-8055 has a service provider of Verizon Cellular, similar to DAVIS's two previously disconnected telephones, (262) 888-0716 and (262) 888-3327.

81. On November 28, 2022, Magistrate Judge Nancy Joseph authorized the electronic surveillance of DAVIS' telephone (414) 403-8055. Case agents served the warrant on Verizon Cellular and learned that DAVIS' telephone (414) 403-8055 no longer active.

82. Case agents learned from subscriber information related to numbers associated with DAVIS' previous telephone numbers, that the numbers shared the same IMEI number of 350879900298541 and IMSI number 311480680692996. The IMEI number in the International Mobile Equipment Identity which is a unique 15-digit code that precisely identifies the device with the SIM card input. The IMSI number is the International Mobile Subscriber Identifier which is

a number of 14-15 digits and identifies a mobile subscriber by their SIM card. Based on this information, it appeared DAVIS was changing his number but using the same SIM card. Case agents know through training and experience that drug traffickers often change their telephone number to evade law enforcement but will keep the same cellular device.

83.     In December 2022, case agents review phone tolls from the drug customer line (414) 750-2464 and DAVIS' previous telephones (262) 888-3327 and (414) 403-8055. These phone records helped case agents develop DAVIS' number (262) 278-2746, which had IMEI number of 350879900298541 and IMSI number 311480680692996.

84.     Based on prior court authorized electronic surveillance of DAVIS' new number, (262) 278-2746 with IMEI number of 350879900298541 and IMSI number 311480680692996, was appearing as similar past frequency reports to the drug customer telephone (414) 750-2464, as DAVIS's prior numbers did. Also, case agents observed the drug customer telephone (414) 750-2464 was not receiving contacts from any of DAVIS' prior numbers. Case agents checked the subscriber information on DAVIS' telephone (262) 278-2746 and found the service provider was Verizon Cellular. This is the same as previous telephone numbers possessed by DAVIS. The subscriber information also indicated (262) 278-2746 showed the IMEI number 350879900298541 and IMSI number 311480680692996. These identifiers match DAVIS' prior telephones (262) 888-3327 and (414) 403-8055.

85.     During a review of call detailed records for the drug customer telephone (414) 750-2464 case agents found (262) 278-2746 made 30 contacts with the drug customer telephone (414) 750-2464 between December 1,2022 and December 13, 2022.

86.     Upon review of call detail reports related to DAVIS' telephone (262) 278-2746 case agents found many of the top contacts to be the same as DAVIS's prior telephones (262) 888-3327 and (414) 403-8055. Several contacts that stick out were "Paney Parker" who is known to

be DAVIS girlfriend. Two other contacts that stick out are Tywan Davis who case agents know to be DAVIS brother and Peggy Ware who case agents know to be DAVIS mother.

87.     On December 27, 2022, Magistrate Judge William E. Duffin authorized the electronic surveillance of DAVIS' telephone (262) 278-2746, with IMEI number 350879900298541 and IMSI number 311480680692996. Case agents served the warrant on Verizon Cellular on December 29, 2022. Case agents were notified that DAVIS' telephone (262) 278-2746 was no longer active.

88.     Even though DAVIS' telephone (262) 278-2746 was disconnected, case agents were above to obtain historical data regarding this number. Based on historical data obtained from the federal search warrant, case agent determined DAVIS' telephone (262) 278-2746 was disconnected on December 27, 2022. Between November 1, 2022, to December 27, 2022, DAVIS' telephone (262) 278-2746 communicated with the DTO's drug customer telephone 414-750-2464 277 times. Case agents observed that DAVIS's telephone (262) 278-2746 communicated with the DTO's drug customer telephone 414-750-2464 on December 18, 2022, and then again on December 21, 2022, the day following the undercover control buy with PINKARD.

89.     As noted, based on my training and experience, this frequent changing of telephone numbers is consistent with drug trafficker's attempts to evade law enforcement. Though DAVIS has changed his telephone number through this investigation, DAVIS' service provider of Verizon, the IMEI number 350879900298541 and IMSI number 311480680692996 has stayed the same.

**b.  GRAHAM's Telephone (414) 345-7827**

90.     As part of the investigation into the DTO, case agents reviewed call detail records between December 11, 2021, and January 28, 2022, from DAVIS' previous telephone (262) 888-0716. DAVIS's previous telephone (262) 888-0716 was used to set up the controlled drug transactions on January 14, 2022, and January 27, 20022. Between December 11, 2021, and

January 28, 2022, DAVIS contacted (414) 840-9759, the DTO's older drug telephone provided by GRAHAM during the undercover controlled buy on January 27, 2022, 184 times. Further case agents observed DAVIS's previous telephone (262) 888-0716 contacted GRAHAM's telephone (414) 345-7827, 140 times between this time frame also. Case agents also reviewed call detail records between DAVIS' previous number (262) 888-3327 and found 171 contacts with (414) 345-7827 between February 12, 2022, and June 18, 2022. Also, between August 26, 2022, and October 30, 2022, DAVIS's newest telephone (414) 403-8055 and GRAHAM's telephone (414) 345-7827 had 43 contacts.

91. GRAHAM's telephone number (414) 345-7827 has a service provider of Verizon Cellular.

92. Case agents also reviewed a law enforcement database and located (414) 345-7827 being a telephone number used by GRAHAM.

93. Also, on January 27, 2022, prior to the undercover controlled buy, case agents observed DAVIS and GRAHAM enter Educators Credit Union located at 6131 West Center Street, Milwaukee, WI. DAVIS was driving the same black Ford Fusion rental with Florida license plate 88ABGR which DAVIS and GRAHAM used during the controlled buy. Case agents obtained a federal subpoena for records from Educator Credit Union regarding DAVIS and GRAHAM. Educator Credit Union had an account for GRAHAM in which GRAHAM listed his telephone number (414) 345-7827.

**c. PINKARD's Telephone (414) 748-5568**

94. As part of the investigation into the DTO, case agents determine PINKARD had another telephone number, besides the DTO's drug costumer telephones (414) 840-9759, (414) 587-6004 and (414) 750-2464.

95.     Case agents reviewed call detail records of the DTO's drug customer telephone (414) 840-9759, which had 56 contacts to telephone (414) 748-5568 between December 9, 2021, and March 1, 2022.

96.     Case agents reviewed call detail records between (414) 748-5568 and the DTO's drug customer telephone (414) 587-6004 and observed 28 contacts between March 15, 2022, and July 5, 2022.

97.     Case agents reviewed call detail records between the DTO's newest drug customer telephone (414) 750-2464.  Between July 5, 2022, and October 5, 2022, the DTO's newest drug customer telephone (414) 750-2464 had 42 contacts with PINKARD's telephone (414) 748-5568.

98.     Case agents used a law enforcement database which indicated (414) 748-5568 was a number associated with Juiquin PINKARD.  Case agents review phone records for (414) 748-5568, which indicated the service provider as AT&T.  Further A&T records indicated the subscriber was Quan PINKARD at 5831 North 62nd Street, Milwaukee, WI 53218.  PINKARD has a listed address of 5831 North 62nd Street, Milwaukee, WI 53218 with Wisconsin DOT.

### d.  DOUGHTY'S Telephone (414) 719-1574

99.     As part of the investigation in to the DTO, case agents reviewed call detail records to determine DOUGHTY'S telephone number.  Case agents developed (414) 719-1574 based on the controlled buy on March 24, 2022.  During the controlled buy on March 24, 2022, a review of call detail records showed (414) 719-1574 contacted PINKARD's telephone (414) 748-5568 five times within 45 minutes preceding the controlled buy.  DOUGHTY and Haramis were also observed exiting PINKARD's residence of 4711 North 89th Street, Milwaukee, WI following the undercover controlled drug buy on June 9, 2022.

100.     Case agents reviewed call detail records between (414) 719-1574 and the DTO's drug customer telephone (414) 587-6004 and observed seven contacts between May 9, 2022, and July 5, 2022.

101.     Case agents reviewed a law enforcement database regarding DOUGHTY and found (414) 719-1574 was a number associated with DOUGHTY.

### e.  HARAMIS' Telephone (224) 601-4290

102.     As part of the investigation into the DTO, case agents reviewed call detail records to determine Haramis was using telephone (224) 601-4290.

103.     During the review of call detail records of the DTO's drug customer telephone (414) 587-6004, case agents found (224) 601-4290 was regularly one of the top contacts for the telephone.  Case agents reviewed the call detail records between the DTO's drug customer telephone (414) 587-6004 and (224) 601-4290 and observed 528 contacts between March 16, 2022, and June 22, 2022.

104.     Case agents reviewed the call detail records for the controlled buy on March 24, 2022.  At 8:28 a.m. the DTO's drug customer telephone (414) 587-6004 contacted Haramis' telephone (224) 601-4290.  UC called the DTO's drug customer telephone (414) 587-6004 at 9:28 a.m.  Originally the DTO stated it could not meet with UC in Racine; however, around 11:30 a.m. the DTO reached back out to UC and said the deal could happen in Racine, but it needed to happen right away.  Just prior to 11:30 a.m. the DTO's drug customer telephone (414) 587-6004 was in contact with DAVIS' telephone (262) 888-3327 three times, GRAHAM's telephone (414) 345-7827 five times and Haramis' telephone (224) 601-4290 two times.  After 11:30 a.m. and the deal being scheduled, Haramis' telephone (224) 601-4290 and the DTO's drug customer telephone (414) 587-6004 had eight contacts, while the DTO was supposed to be heading to meet UC.  This was between 11:38 a.m. and 12:50 p.m.  After 12:50 p.m. PINKARD's telephone (414) 748-5568

contacted DOUGHTY's telephone (414) 719-1574 five times. Haramis' telephone (224) 601-4290 and DOUGHTY's telephone (414) 719-1574 made 41 contacts on March 24, 2022, between 10:09 a.m. and 1:53 p.m., 18 voice calls and 23 text messages. Between 12:20 p.m. and 1:53 p.m. DOUGHTY's telephone (414) 719-1574 did not have any contact with Haramis but five contacts with PINKARD's telephone (414) 748-5568.

105.     Case agents reviewed a law enforcement database and confirmed (224) 601-4290 was a number associated with Haramis. Phone records show (224) 601-4290 is a prepaid phone with no association.

### f.   Drug Customer Telephones (414) 840-9759, (414) 587-6004 and (414) 750-2464

106.     During the investigation the DTO continually changed the drug customer telephone every several months. During the investigation the DTO used three different drug customer telephones. Based on my training and experience, this is a common method used by a DTO to evade law enforcement efforts in using electronic surveillance or other investigate technique to identify co-conspirators or the DTO members' residences, stash locations and/or modes of operations.

107.     During the undercover controlled buy on January 27, 2022, with GRAHAM and DAVIS, GRAHAM provided telephone (414) 840-9759 to UC for future controlled buys. The telephones remained active, and UC conducted controlled buys from the DTO's drug costumer telephone (414) 840-9759 on February 10, 2022, and February 24, 2022. On March 1, 2022, the DTO's drug customer telephone (414) 840-9759 notified that the number would be dropped, and drug customers were to use the DTO's new drug customer phone (414) 587-6004. Starting on March 4, 2022, the DTO's drug customer telephone (414) 587-6004 was used to communicate with the DTO to conduct controlled buys, which included the undercover controlled buys on March 24, 2022, and June 9, 2022. Case agents conducted court authorized electronic surveillance of the

DTO's drug customer telephone (414) 587-6004. During the time of the monitoring of the court authorized electronic surveillance, the DTO's drug customer telephone (414) 587-6004 was regularly at PINAKRD's residence of 4711 North 89th Street, Milwaukee, WI overnight.

108.    On July 5, 2022, the DTO's texted messaged UC using (414) 750-2464 and indicated (414) 750-2464 was the DTO's newest drug customer telephone.

109.    On October 21, 2022, the DTO again reached out to UC using the DTO's newest drug customer telephone (414) 750-2464. The DTO text messaged UC "better work better numbers." Based on my training and experience, the term "work" is used by drug traffickers as slang for heroin. Based on this message, case agents believe the DTO's drug costumer telephone (414) 750-2464 is active and being used to conduct illegal drug transactions currently.

110.    Case agents reviewed a databased which indicated (414) 750-2464 had a service provider of US Cellular. US Cellular was also the service provider for the DTO's previous drug customer telephones (414) 840-9759 and (414) 587-6004.

111.    On December 20, 2022, PINKARD used (414) 750-2464 to conduct the undercover controlled drug transaction of 26 grams of fentanyl.

**g.    Additional call detail records between members of the DTO**

112.    Case agents reviewed call detail records of DAVIS' previous telephone (262) 888-3327, PINKARD's cellular telephone (414) 748-5568, GRAHAM's cellular telephone (414) 345-7827 and DAVIS's DTO's previous drug customer phone (414) 587-6004 during the time frame of March 28, 2022, and April 11, 2022.

113.    Between March 28, 2022, and April 11, 2022, DAVIS' previous telephone (262) 888-3327 contacted the DTO's previous drug customer telephone (414) 587-6004 32 times, GRAHAM's telephone (414) 345-7827 22 times and had zero contacts with PINKARD's telephone (414) 748-5568.

114.    Between March 28, 2022, and April 11, 2022, PINKARD's phone (414) 748-5568 contacted the DTO's drug customer telephone (414) 587-6004 5 times.  PINKARD's telephone (414) 748-5568 had zero contacts with DAVIS' previous telephone (262) 888-3327 and zero contacts with GRAHAM's telephone (414) 345-7827 during this time frame.  Based on this information, and the undercover controlled buys occurring during this time, case agents believed PINKARD was running and delivering the controlled substances for the DTO.

115.    Between March 28, 2022, and April 11, 2022, GRAHAM's telephone (414) 345-7827 continued to contact DAVIS' previous telephone (262) 888-3327 22 times but has zero contacts with PINKARD's telephone (414) 748-5568 or the DTO's previous drug custom telephone (414) 587-6004.  Case agents believe it is possible that GRAHAM recently added another number to communicate with PINKARD and the DTO's previous drug customer phone as prior phone records show GRAHAM was having contact with PINKARD and the DTO's drug customer phone.  Regardless, GRAHAM continued his contract with DAVIS over this period.

### D.  USE OF RENTAL VEHICLES BY THE DTO

116.    During the course of the investigation the DTO has continually used rental vehicles to conduct illegal business.  Case agents developed Marquist Davis and GRAHAM as individuals renting vehicles for the DTO.  During the investigation the DTO has used more than seven different rental vehicles dating back to mid-January 2022 until the present.  The vehicles are being rented from Avis / Budget rental car company.  Based on my training and experience, DTO's often use rental vehicle to disassociate their identity with the vehicle.  The rental vehicles are often rented by a person who does not use the vehicle.  This is done for multiple reasons.  When conducting illegal activities in a rental vehicle the personal involved can flee and elude police without their identity being known.  Also, if contraband or illegal items are located inside of the rental vehicle the person is able to deny ownership or knowledge of the contraband and or illegal items.

117. Below is a list of known rental vehicles used by the DTO and the locations the rentals were observed during the investigation into the DTO:

a. **4458 North 67th Street, Milwaukee**

118. Around January 24, 2022, until January 31, 2022, GRAHAM rented a black 2020 Ford Fusion. Case agents observed DAVIS as the primarily driver of this rental. The rental was used by DAVIS during the controlled buy on January 27, 2022. This rental was regularly parked at 4458 North 67th Street, Milwaukee.

119. Around February 28, 2022, until April 13, 20222021 GRAHAM rented a red Mazda 6. Case agents observed DAVIS driving this rental and the rental was regularly parked at 4458 North 67th Street, Milwaukee.

120. Around April 13, 2022, until May 5, 2022, GRAHM rented a white 2021 Chevrolet Malibu. Case agents have observed DAVIS driving this rental. The rental was regularly parked at 4458 North 67th Street, Milwaukee.

121. On May 5, 2022, until June 4, 20222021 GRAHAM rented a black Honda Accord. Case agents observed DAVIS as the primary driver of this rental. The rental was regularly parked at 4458 North 67th Street, Milwaukee.

122. On June 4. 2022 until July 5, 2022, GRAHAM rented a grey 2021 Jeep Compass. Case agents observed DAVIS as the primary driver of this rental. The rental was regularly parked at 4458 North 67th Street, Milwaukee.

123. On August 1, 2022, until September 6, 2022, GRAHAM rented a blue 2021 Jeep Cherokee. Case agent observed DAVIS as the primary driver of this rental. The rental was regularly parked at 4458 North 67th Street, Milwaukee.

124.    On September 4, 2022, until September 9, 2022, GRAHAM rented a maroon 2021 Toyota Corolla.  Case agents observed DAVIS as the primary driver of this rental.  The rental was regularly parked at 4458 North 67th Street, Milwaukee.

### b.    2028 North 31st Street, Milwaukee, WI

125.    Around January 27, 2022, until February 9, 2022, GRAHAM rented a silver 2021 Honda Accord.  Case agents observed PINKARD and DAVIS drive this rental.  This rental was used by PINKARD for counter surveillance during the controlled buy on January 27, 2022.  On January 28, 2022, DAVIS was stopped in the vehicle and arrested on drug related charges in Racine County. During this incident DAVIS provide law enforcement and the court system an address of 2030 North 31st Street, Milwaukee, Wisconsin, which has been determined to actually be 2028 North 31st Street, Milwaukee, WI.

### c.    4711 North 89th Street, Milwaukee, WI.

126.    On February 7, 2022, until around March 9, 2022, Marquist Davis rented a silver 2021 Volkswagen Jetta, silver.  Case agents observed PINKARD driving this rental.  The rental was used by PINKARD during controlled buys on February 10, 2022, and February 24, 2022.  Vehicle was regularly parked at 4711 North 89th Street, Milwaukee, WI.

127.    Around April 12, 2022, until around May 12, 2022, Marquist Davis rented a grey 2021 Nissan Altima.  Case agents observed PINKARD operating the rental during the rental period.  The rental was regularly parked at 4711 North 89th Street, Milwaukee, WI.

128.    On May 12, 2022, until June 12, 2022, PINKARD rented a black 2021 Honda CRV. Case agents observed PINKARD operating the rental on a regular basis during the rental period. The rental was regularly parked at 4711 North 89th Street, Milwaukee, WI.

129.    On June 12, 2022, until August 13, 2022, PINKARD rented a silver 2021 Mazda CX5.  Case agents observed PINKARD operating the rental on a regular basis during the rental period.  The rental was regularly parked at 4711 North 89th Street, Milwaukee, WI.

130.    On August 13, 2022, PINKARD rented a black 2021 Toyota Camry, which was due back October 22, 2022; however, case agents observed PINKARD operating the vehicle after the return date.  Case agents observed PINKARD operating the rental on a regular basis during the rental period.  The rental was also regularly parked at 4711 North 89th Street, Milwaukee, WI.

### d.  3029 /3031 North 55th Street – lower, Milwaukee, WI

131.    On August 13, 2022, PINKARD rented a black 2021 Toyota Camry, which was due back October 22, 2022; however, case agents observed PINKARD operating the vehicle after the return date.  On October 31, 2022, case agents observed the Toyota Camry parked in the driveway of 3029 /3031 North 55th Street – lower, Milwaukee, WI.  Case agents observed PINKARD leave 3029 /3031 North 55th Street – lower, Milwaukee, WI by himself in the Toyota Camry in the early afternoon hours.

### e. 5251 North 48th Street, Milwaukee, WI

132.    Around March 9, 2022, until April 12, 2022, Marquist Davis rented a blue 2021 Hyundai Elantra, blue.  Case agents observed PINKARD operating the rental on multiple occasions during the rented timeframe.  During surveillance of PINKARD in the month of March 2022, case agents observed him parked in front of 5251 North 48th Street, Milwaukee, WI with the Hyundai sedan on several occasions.

### f.  Additional Rentals

133.    On July 5, 2022, until August 1, 2022, GRAHAM rented a red 2018 Ford Escape.  Case agents believe DAVIS was the primary driver of this vehicle, based on the pattern of miles put on the rental.  Upon return of the vehicle, Avis records noted approximately 5000 miles were

placed on this vehicle. This is similar to the other rentals GRAHAM would get and then DAVIS would drive.

134. On September 5, 2022, until October 7, 2022, GRAHAM rented a white 2019 Volkswagen Tiguan. Case agents believe DAVIS was the primary driver of this vehicle, based on the pattern of miles put on the rental. Upon return of the vehicle, Avis records noted approximately 5000 miles were placed on this vehicle. This is similar to the other rentals GRAHAM would get and then DAVIS would drive.

135. Upon review of records recovered from Avis / Budget rental company case agents learned the vehicles rented by GRAHAM on DAVIS' behalf cost approximately $12000.00 dating from December 2021 until September 2022. Further, many of the rentals operated by DAVIS, DAVIS would put approximately 5000 miles on the vehicle per month which appears to be high according to the rental company. The rental vehicles operated by PINKARD which were rented by PINKARD himself and Marquist DAVIS cost approximately $6000.00 dating from March 2022 until October 2022. Many of PINKARD's rental vehicles had excessive miles as it relates to the average person renting the vehicles per the rental company. I know through my training and experience that drug traffickers who use rental vehicles often log large amounts of miles based on driving to meet their source of supply which is often out of town or out of state for the traffickers. Alternatively, drug traffickers using rental vehicles will also have excessive miles due to daily travel to meet drug customers and to drive between locations in which the DTO's controlled substance or other tools of the DTO are being stored.

## E. DTO'S DRUG PROCEEDS

136. During this investigation case agents determined GRAHAM was using an account at Educator's Credit Union to deposit the DTO's drug proceeds. GRAHAM would then use this account to pay for the rental DAVIS would use. Case agents also learned DAVIS made several

trips to Potawatomi Casino. Based on the investigation, case agents determined DAVIS was attempting to launder drug proceeds at the Casino.

### a. 3057A North 52nd Street, Milwaukee, WI

137.    Case agents observed GRAHAM using an ATM machine at Educator's Credit Union on multiple occasions. Present during some of these transactions with GRAHAM was PINKARD or DAVIS. Based on the observation case agents subpoenaed Educator's Credit Union records for GRAHAM. GRAHAM held an account at Educator's Credit Union which listed his home address of 3057A North 52nd Street, Milwaukee, WI, and telephone number of (414) 345-7827. In review of the records case agents did not locate any payroll deposits into this account held by GRAHAM. Instead, case agents observed that the account is used for cash deposits that occur near in time to GRAHAM renting vehicles for DAVIS, withdrawals to car rental companies, and withdrawals at ATMs at Potawatomi Casino. Based on this information and the physical surveillance which showed the DTO sharing rental vehicles, case agents believe that DAVIS and/or PINKARD are providing GRAHAM with cash from drug proceeds. In return GRAHAM is depositing the cash and renting the vehicles for DAVIS and PINKARD.

138.    On December 24, 2021, GRAHAM deposits $1,180.00 in cash. The deposit consisted of 59 $20 bills. GRAHAM was with DAVIS and DAVIS was driving the vehicle. Unfortunately, due to the surveillance video of this deposit, case agents were not able to identify the details of the vehicle.

139.    On January 24, 2022, GRAHAM deposits $2,100.00 in cash which consisted of 2 $10 bills, 79 $20 bills, and 5 $100 bills. GRAHAM was by himself for this deposit. On this same day, GRAHAM rents the black Ford Fusion with Florida plates 88ABGR for $588.59. This Ford Fusion was driven by GRAHAM with DAVIS as his passenger during the undercover controlled drug transaction on January 27, 2022.

140.     On January 27, 2022, GRAHAM deposits $900.00 in cash.  The deposit consisted of 4 $5 bills, 4 $10 bills, and 42 $20 bills.  GRAHAM was driving a black Ford Fusion for this deposit and PINKARD was his passenger.  Case agents observed the deposit during surveillance on this day.  On this same day, GRAHAM rented a silver Honda Accord with Illinois plates CU21390. The rental was for $1,199.55.  On January 27, 2022, PINKARD used this rental vehicle as counter surveillance during the undercover controlled drug transaction.  The silver Honda with Illinois registration CU 21390 was also the vehicle DAVIS was arrest in on January 28, 2022.

141.     On February 28, 2022, GRAHAM deposits $1,200.00 in cash.  The deposit consisted of 60 $20 bills.  GRAHAM was in the passenger seat and DAVIS was driving. On this same day GRAHAM rented the red Mazda with Illinois plates CB70027.  Unfortunately, there was no rental amount list for this rental agreement.

142.     On May 2, 2022, GRAHAM made two cash deposits totaling $1,200.00 into his account of Educator's Credit Union.  On May 4, 2022, GRAHAM deposited $1,100.00 in cash.  Case agents reviewed Avis / Budget Rent a Car records and found GRAHAM made payment to Budget Rent a Car on May 3, 2022, for $1,164.78.  GRAHAM made a second payment of $1,382.52 on May 5, 2022.  Educator's Credit Union records reflect a debit card withdrawal from GRAHAM'S account in the amount $1164.78 paid on May 3, 2022, to Budget Rent a Car.

### b. Player's Card

143.     During the month of March 2022 case agents conducted surveillance of DAVIS.  During the surveillance it was found DAVIS spends time at Potawatomi Casino.  Case agents learned DAVIS holds a player's card.  Case agents review the records of DAVIS player's card and found DAVIS has used around $120,000.00 on his player's card for the year of 2022.  Case agents conducted a second review of records and found between March 2022 and June 2022; DAVIS used approximately $400,000.00 on his player's card.  Based on my training and experience, I

know that members of DTO will use drug proceeds at casinos, in an attempt to make the fund appear legally obtained, as known as "laundering" the drug proceeds.

144.    During the month of May 2022, case agents spoke to the CS regarding DAVIS. During the conversation with the CS, he/she stated DAVIS was still actively trafficking controlled substances.  Further, the CS saw DAVIS in possession of a large amount of United States currency. The CS told case agents, based on past experience with DAVIS and observations of amounts of United States currency possessed by DAVIS in the past, she/he believed the amount of cash possessed by DAVIS was in excess of $14,000.00.

## F.  FURTHER SURVEILLANCE OF DTO MEMBERS

### a.  4458 North 67th Street, Milwaukee

145.    On January 24, 2022, GRAHAM rented a Ford Fusion from Avis Rental.  The Ford Fusion rental was used in the undercover controlled buy on January 27, 2022, with GRAHAM and DAVIS, when PINKARD was conducting surveillance.  GRAHAM was driving the vehicle during the operation with DAVIS as a passenger.  During the investigation the Ford was parked at 4458 North 67th Street, Milwaukee overnight on several occasions when case agents checked the address.  Based on the Ford Fusion rental vehicle being located overnight case agents believe 4458 North 67th Street, Milwaukee is the residence of DAVIS. Case agents later confirmed this belief through electronic surveillance, which indicated DAVIS' telephone (262) 888-3327 was regularly located at 4458 North 67th Street, Milwaukee overnight.

146.    On February 28, 2022, GRAHAM rented another vehicle from Avis Rental, a red Mazda 6 as part of the DTO's ongoing drug operations.  Case agents observed the DAVIS' Mazda parked on a regular basis during early morning hours and overnight at 4458 North 67th Street, Milwaukee.  Case agents observed DAVIS operating the vehicle.  For example, on March 2, 2022,

at 7:30 a.m., case agents conducted surveillance on 4458 North 67th Street, Milwaukee. At approximately 10:30 a.m. case agents observed DAVIS leave the residence and enter the Mazda 6.

147.	During the month of March 2022 DAVIS was operating a red 2021 Mazda 6 with Illinois license plate CB70027. The vehicle was parked regularly at 4458 North 67th Street, Milwaukee which is DAVIS' residence. The vehicle was an Avis rental which was rented by GRAHAM.

148.	On March 29, 2022, five days following the undercover controlled buy for 100 grams of fentanyl with PINKARD and DOUGHTY, case agents were monitoring call detail records and court authorized electronic surveillance for DAVIS' previous telephone (262) 888-3327, PINKARD'S telephone (414) 748-5568 and the DTO's previous drug customer phone (414) 587-6004. In the afternoon PINKARD contacted DAVIS. At this time PINKARD was at DAVIS' residence at 4458 North 67th Street, Milwaukee. Approximately ten minutes after the phone call, case agents observed DAVIS arrive at his residence, 4458 North 67th Street, Milwaukee. Both DAVIS and PINKARD entered 4458 North 67th Street, Milwaukee. After only a couple minutes PINKARD exited the residence with a plastic grocery type bag. PINKARD entered his 2021 Hyundai Elantra rental vehicle and left the area. Based on my training, experience, and the investigation into the DTO, the conducted observed by case agents was consistent with PINKARD obtained controlled substances from DAVIS.

149.	On April 9, 2022, case agents were monitoring call detail records and court authorized electronic surveillance of GRAHAM's telephone (414) 345-7827 and DAVIS' previous telephone (262) 888-3327. GRAHAM's telephone (414) 345-7827 contacted DAVIS' previous telephone (262) 888-3327, while GRAHAM's telephone (414) 345-7827 was at DAVIS's residence, 4458 North 67th Street, Milwaukee. DAVIS' previous telephone (262) 888-3327 was

in Watertown, WI at this time.  After the contact GRAHAM left DAVIS's residence, 4458 North 67th Street, Milwaukee, and returned to his residence at 3057A North 52nd Street, Milwaukee, WI.

150.    On September 6, 2022, case agents conducted surveillance at DAVIS' residence, 4458 North 67th Street, Milwaukee.  At approximately 12:36 p.m. case agents observed DAVIS arrive at 4458 North 67th Street, Milwaukee operating a red 2021 Toyota Corolla with Florida registration JKHE63.  The vehicle was registered to PV Holding which is the company associated with Avis / Budget Rent a Car and was rented by GRAHAM.  DAVIS parked the vehicle in the driveway of 4458 North 67th Street, Milwaukee and enter the side door on the south side of 4458 North 67th Street, Milwaukee.

**b.  2028 North 31st Street, Milwaukee, WI**

151.    On March 2, 2022, at 7:30 a.m., case agents observed DAVIS left his residence of 4458 North 67th Street, Milwaukee, and drive to 2028 North 31st Street, Milwaukee, WI.  DAVIS exited his vehicle and made a short contact with an individual later identified as Darryl Ware through Wisconsin DOT photo.  After the contact DAVIS returned to the Mazda 6 and left the area.  Case agents eventually lost DAVIS due to his erratic driving.

152.    On April 26, 2022, at approximately 10:15 a.m. case agents conducted physical surveillance on PINKARD's residence of 4711 North 89th Street, Milwaukee, WI.  During the surveillance case agents observed the 2021 Nissan Altima parked in front of the residence.  Case agents were also monitoring the call detail records for the DTO's previous drug customer telephone (414) 587-6004 during this time.  At approximately 10:19 a.m. the DTO's previous drug customer telephone (414) 587-6004 contacted (414) 629-9198, Home Care LLC.  Shortly after the phone contact PINKARD left 4711 North 89th Street, Milwaukee, WI through the front door and enter the 2021 Nissan Altima.  Case agents attempted to follow PINKARD but due to erratic driving patterns by PINKARD case agents lost the vehicle.  At this time case agents attempted to

monitor the court authorized electronic surveillance of the DTO's previous drug customer telephone (414) 587-6004. The DTO's previous drug customer telephone (414) 587-6004 traveled to the area near 2028 North 31st Street, which is the tire shop associated with DAVIS and is where the controlled buy on January 12, 2022, occurred. Within 15 minutes the DTO's previous drug customer telephone (414) 587-6004 returned back to the area of PINKARD's residence, 4711 North 89th Street, Milwaukee, WI. Due to the time frame of 15 minutes between the electronic surveillance, case agents were not able to make observations of the activity of PINKARD during this time frame.

### c. 4711 North 89th Street, Milwaukee, WI

153. Between March 9, 2022, and April 12, 2022, while case agents observed PINKARD operating the 2021 Hyundai, PINKARD was observed parking in front of 4711 North 89th Street, Milwaukee, WI. PINKARD was observed entering the front door and using a key to make entry. On March 29, 2022, case agents conducted a garbage pull at 4711 North 89th Street, Milwaukee, WI. Located in the garbage were several sandwich baggies with the corners missing, similar to what case agents located at 5251 North 48th Street, Milwaukee, WI. Also located was an Avis Budget rental agreement for the silver Volkswagen with Ohio HZT 7153. The Volkswagen was rented by Marquist Davis. Further PINKARD used the Volkswagen during the controlled buys on February 10, 2022, and February 24, 2022.

154. As previously noted above, on April 26, 2022, PINKARD left 4711 North 89th Street, Milwaukee, WI and traveled to the area near 2028 North 31st Street. Within 15 minutes PINKARD returned back to his residence, 4711 North 89th Street, Milwaukee, WI.

155. Between April 25, 2022, and July 5, 2022, UC continued to maintain contact with the DTO's previous drug customer telephone (414) 587-6004. Upon monitoring the court authorized electronic surveillance of (414) 587-6004, the phone was often located at PINKARD'S

residence of 4711 North 89th Street, Milwaukee, WI including overnight periods.

156.    On May 9, 2022, case agents conducted surveillance of PINKARD's residence, 4711 North 89th Street, Milwaukee, WI.  Case agents observed a silver 2011 Buick Lucerne parked in front of 4711 North 89th Street, Milwaukee, WI.  Case agents reviewed Wisconsin DOT records and determined the vehicle was registered to Lamondre D. Lane. Case agents also observed a male in the driver's seat of the 2011 Buick Lucerne and later identified this person as Lamondre D. Lane (DOB XX/XX/1993) through Wisconsin DOT photo.  Case agents observed an unidentified person leave PINKARD's residence, 4711 North 89th Street, Milwaukee, WI, enter Lane's vehicle and traveling out of the area.

157.    Case agents reviewed Milwaukee County Case 2018CF003512 which indicated Lane was convicted of possession with intent to distribute cocaine.  Lane was sentenced on July 1, 2019, and is currently on extended supervision with the Wisconsin Department of Correction (DOC).  As part of Lane's rules under his supervision he was not allowed to be associated with any known drug dealers or drug houses.  PINKARD was on federal supervision regarding Eastern District of Wisconsin case 2020-CR-41 and was actively dealing controlled substances.  Also, during the criminal investigation of the DTO, case agents learned 4711 North 89th Street, Milwaukee, WI was a drug house being utilized by the DTO, specifically PINKARD.

158.    During surveillance on May 26, 2022, case agents saw Lane's 2011 Buick Lucerne parked in front of 4711 North 89th Street, Milwaukee, WI mid-morning.  It was unknown if Lane was in the residence.  Based on the information learned during the investigation, case agents reviewed call detail records for the DTO's previous drug customer telephone (414) 587-6004 and PINKARD's telephone (414) 748-5568.  Case agents observed that (414) 539-8708 was a top contact for both the DTO's previous drug customer telephone (414) 587-6004 and PINKARD's

telephone (414) 748-5568. Case agents reviewed a law enforcement database which indicated that (414) 539-8708 was associated with Lane.

159. On August 8, 2022, at approximately 12:50 p.m. case agents conducted a check of the PINKARDS residence at 4711 North 89th Street, Milwaukee, WI. Upon checking the residence case agents noted PINKARD'S 2021 Mazda CX5 was parked in front of the residence. Case agents also noted a 2009 Audi A4 WI license plate AMK3977(with connection to DOUGHTY) was also parked in front of 4711 North 89th Street, Milwaukee, WI. The 2009 Audi was used by Doughty during the controlled buy on March 24, 2022. Case agents also observed the 2009 Audi parked in front of DOUGHTY's residence, 2720 East Edgerton Avenue Apartment #6, Cudahy, WI, on a regular basis during this investigation.

160. Case agents continued to conducted surveillance on PINKARD's residence 4711 North 89th Street, Milwaukee, WI. At approximately 1:05 p.m. case agents observed PINKARD and HARAMIS exit the front door of 4711 North 89th Street, Milwaukee, WI. Based on the investigation, case agents know HARAMIS and DOUGHTY share a child together. Upon exiting the residence PINKARD was carrying a dark colored backpack. PINKARD entered the drive seat of the 2021 Mazda CX5 with the backpack. HARAMIS entered the front passenger seat of the 2021 Mazda CX5. After sitting inside the vehicle for approximately 5 minutes the vehicle traveled out of the area with both PINKARD and HARAMIS. Your affiant states based on his training and experience in conducting illegal narcotic investigation he knows people who trafficking controlled substance will often use backpacks to transport items such as but not limited to controlled substances, packaging paraphernalia, United States currency, illegal firearms, and documents.

161. On September 21, 2022, case agents checked PINKARD's residence 4711 North 89th Street, Milwaukee, WI in the morning hours and noted a 2021 Toyota Camry with Georgia registration TAA8821 was parked in front of the residence. Case agents reviewed records that

indicated Pinkard rented the vehicle.  On October 26, 2022, case agents saw an individual later identified as Shakalya Prince exit 4711 North 89th Street, Milwaukee, WI and drive off in Toyota Camry.  On October 31, 2022, case agents observed PINKARD in the Toyota Camry.

162.    On December 14, 2022, case agents observed PINAKRD's black 2023 Mazda CX 50 SUV, with Wisconsin license plate ASE4172 and VIN 7MMVABCM3PN123589 parked to the rear of 4711 North 89th Street, Milwaukee, WI, outside next to the garage.  Review of DOT records indicated the Mazda CX is registered to PINARK for the location 4711 North 89th Street, Milwaukee, Wisconsin, with a lien holder of JP Morgan/Chase Bank.

163.    Case agents also observed PINKARD's Mazda CX on December 20, 2022, parked in front of 4711 North 89th Street, Milwaukee, WI.  Case agents also observed PINKARD driving the Ma Mazda CX that same day, including using the Mazda CX during the undercover controlled buy.

### d.  3029 /3031 North 55th Street – lower, Milwaukee, WI

164.    During the investigation case agents learned through electronical and physical surveillance PINKARD was frequently at a residence in the 3000 block of North 55th Street.  On June 13, 2022, case agents observed PINKARD'S 2021 Mazda CX5 rental vehicle parked in the driveway to 3029 /3031 North 55th Street – lower, Milwaukee, WI.  At approximately 11:15 a.m. case agents observed PINKARD walking down the driveway and placing garbage cans / bags in front of the residence of 3029 /3031 North 55th Street – lower, Milwaukee, WI.  After placing the garbage in front of the residence PINKARD left the area in the 2021 Mazda CX5.

165.    Case agents reviewed Milwaukee City Assessor website that indicated the property is a duplex owned by Michael Payton since February 13, 2002.  Case agents obtained energy bill records for the duplex, and Michael Payton was listed on the billing for 3029 /3031 North 55th Street – lower, Milwaukee, WI.  Case agents reviewed Wisconsin Circuit Court Access and located

several matters involving Michael Payton. In Milwaukee County Case 2016CV885 and 2012CV002718, Michael Payton provided an address of 3029 North 55th Street, Milwaukee, WI. Case agents conducted surveillance of the residence and observed a male, later identified as Michael Payton through Wisconsin DOT photos, entering the residence through the front door. Case agents observed PINKARD enter the residence, 3029 /3031 North 55th Street – lower, Milwaukee, WI, using the east door of the duplex. Based on the records reviewed and physical surveillance of 3029 /3031 North 55th Street – lower, Milwaukee, WI, case agents determined PINKARD has access to this residence using the side door; while the homeowner, has access to 3029 North 55th Street, Milwaukee, WI through the front door of the duplex.

166. On November 22, 2022, case agents conducted surveillance at 3029 /3031 North 55th Street – lower, Milwaukee, WI. Case agents observed Michael Payton arrive home and used the front door to enter the residence. Case agents then observed the upper lights turn on. None of the lower lights were on. Later case agent observed another individual arrive and enter the building using the side door. Case agents observed lights of the lower unit turn on. Based on these observations, case agents determined PINKARD accesses the lower unit of the building, while the homeowner, Michael Payton resides in the upper.

167. On October 31, 2022, case agents observed PINKARD's rented Toyota Camry parked in the driveway of 3029 /3031 North 55th Street – lower, Milwaukee, WI. Case agents observed PINKARD leave 3029 /3031 North 55th Street – lower, Milwaukee, WI by himself in the Toyota Camry in the early afternoon hours.

### e. 3057A North 52nd Street, Milwaukee, WI

168. As previously noted, on April 9, 2022, case agents were monitoring call detail records and court authorized electronic surveillance of GRAHAM's telephone (414) 345-7827 and DAVIS' previous telephone (262) 888-3327. GRAHAM's telephone (414) 345-7827 contacted

DAVIS' previous telephone (262) 888-3327, while GRAHAM's telephone (414) 345-7827 was at DAVIS's residence, 4458 North 67th Street, Milwaukee. DAVIS' previous telephone (262) 888-3327 was in Watertown, WI at this time. After the contact GRAHAM left DAVIS's residence, 4458 North 67th Street, Milwaukee, and returned to his residence at 3057A North 52nd Street, Milwaukee, WI.

        **f.   5251 North 48th Street, Milwaukee, WI**

169.     During the month of March 2022 case agents determined PINKARD was driving a blue 2021 Hyundai sedan, with Minnesota license plates of FXV585. As notes previously, the vehicle was rented by Marquist Davis. Marquist Davis listed an address of 5251 North 45th Street, Milwaukee, WI. Based on the investigation, case agents believed Marquist Davis provided an incorrect address and the true address is 5251 North 48th Street, Milwaukee, WI. Based on my training and experience, members of a DTO may provide false addresses in order to evade law enforcement. Case agents believe the correct address is 5251 North 48th Street, Milwaukee, WI based on the surveillance of PINKARD, which had him parked in front of 5251 North 48th Street, Milwaukee, WI with the Hyundai sedan on several occasions in the month of March 2022.

170.     Also, court authorized GPS trackers in May 2022 and June 2022 of other rental vehicles operated by PINKARD placed PINKARD at 5251 North 48th Street, Milwaukee, WI daily, but not overnight. Also 5251 North 48th Street, Milwaukee, WI is in the area of the controlled buys that occurred on February 10, 2022, and February 24, 2022.

171.     On March 29, 2022, case agents conducted a garbage pull from the residence at 5251 North 48th Street, Milwaukee, WI. Case agents located multiple sandwich baggies with the corners missing. Based on my training and experience the ripped plastic baggies are consistent with remains from corner cuts. More specially, DTOs commonly packages drugs into small plastic baggies to sell and then ripping the top of the plastic baggy while tying off the drug and packaging,

discarding the unused portion of the baggie.  Also located during the garbage pull of 5251 North 48th Street, Milwaukee, WI were identifiers on CVS prescription paperwork to the last name of PINKARD at the address.

### g.  2720 East Edgerton Avenue Apartment #6, Cudahy, WI

172.    On March 24, 2022, after completion of the controlled buy, DOUGHTY left the area and returned to Milwaukee in the area near 2720 East Edgerton Avenue, Apartment 6, Cudahy, WI.  After identifying DOUGHTY, case agents review a law enforcement database which indicated DOUGHTY's residence as 2720 East Edgerton Avenue, Apartment 6, Cudahy, WI.  Case agents also observed the 2009 Audi parked in front of DOUGHTY's residence, 2720 East Edgerton Avenue Apartment #6, Cudahy, WI, on a regular basis during this investigation.

173.    Also, as noted above, on August 8, 2022, case agents observed DOUGHTY's 2009 Audi A4 with Wisconsin license plate AMK3977 parked in front of PINKARD's residence of 4711 North 89th Street, Milwaukee, WI.

### G.  COURT AUTHORIZED GPS SURVEILLANCE OF DTO

174.    During the investigation into this DTO, case agents attempted to conduct surveillance of the DTO and associated vehicles with the use of court authorized electronic surveillance.  Due to the delay in receiving the information the vehicles and/or persons were often in a different location by the time case agents made it to the area.  Court authorized GPS tracking on vehicles allowed case agents to have live accurate location information of the vehicles involved in the criminal active.  It also helped identify the person operating and maintain the rental vehicle. This information helped case agents identify locations used by the DTO to store tools of their criminal operations including money, controlled substance, drug paraphernalia and sometimes weapons.  Further it helped document travel pattern when going to and return from controlled buys and other locations associated with the DTO.

175.     While conducting surveillance on the DTO, PINKARD and DAVIS were identified as the main individuals operating the rental vehicles.  PINKARD and DAVIS both normally drove in a reckless manner making it difficult for case agents to follow.  This style of driving is often used by criminals to elude criminal investigations and surveillance by law enforcement.  Further, the DTO used counter-surveillance often.  For example, on March 8, 2022, case agents were conducting surveillance on PINKARD and the rental Volkswagen Jetta.  PINKARD observed law enforcements unmarked undercover vehicle and conducted evasive driving behaviors in an attempted to look into the vehicle.  Case agents attempted to leave the area and PINKARD continued to follow.  Based on my training and experience, PINKARD attempted to conduct counter surveillance for the DTO during this incident.

176.     Given the tactics used by the DTO, case agents deployed a court authorized GPS unit on PINKARD's vehicles.

   a.  **May 2, 2022, connections to 4458 North 67th Street, Milwaukee, 4711 North 89th Street, Milwaukee, WI, 3029 /3031 North 55th Street – lower, Milwaukee, WI, 5251 North 48th Street, Milwaukee, WI.**

177.     Case agents reviewed data collected from May 2, 2022, of the court authorized GPS unit on PINKARD's 2021 Nissan Altima.  Upon review of the data the Nissan Altima made excess of 23 stops between 7:50 a.m. and 8:54 p.m.  At approximately 8:58 a.m. the Nissan Altima arrived at 3029 /3031 North 55th Street – lower, Milwaukee, WI.  The 2021 Nissan Altima left the location several minutes later and traveled to DAVIS' residence, 4458 North 67th Street, Milwaukee.  During this time telephone records show the DTO's previous drug customer phone (414) 587-6004 contacted DAVIS' previous telephone (262) 888-3327 before arriving and just after leaving 4458 North 67th Street, Milwaukee.  Also, during this contact case agents observed DAVIS and PINKARD enter 4458 North 67th Street, Milwaukee around 9:20 a.m.  Case agents observed PINKARD leave 4458 North 67th Street, Milwaukee carrying what appeared to be a grocery bag.

Similar to case agents' observations on March 29, 2022, PINKARD's and DAVIS' conduct and the carrying of the grocery bag is consistent with PINKARD obtain additional controlled substances from DAVIS for the DTO's drug customers. PINKARD returned to the 2021 Nissan Altima and left the area.

178. Also on May 2, 2022, PINKARD traveled directly to 5251 North 48th Street, Milwaukee, WI arriving at approximately 10:11 a.m. PINKARD was at the location for approximately 20 minutes. PINKARD left 5251 North 48th Street, Milwaukee, WI at approximately 10:21 a.m. and traveled back to 4711 North 89th Street, Milwaukee, WI. During his travels to return home to 4711 North 89th Street, Milwaukee, WI, PINKARD did not take the most direct route home. Based on my training, experience, and investigating into this DTO, PINKARD's non-direct route was consistent with attempts to evade law enforcement, especially given the interactions with law enforcements attempts to follow him on March 8, 2022. Based on my training, experience, and investigation into the DTO, PINKARD traveled in a manner that would help determine if he was being followed by law enforcement or possible another DTO's looking to conduct a home invasion to rob PINKARD of illegal drugs, money, or guns.

179. Further on May 2, 2022, at approximately 1:04 p.m. the Nissan Altima arrived back at 5251 North 48th Street, Milwaukee, WI. The 202 Nissan Altima left the location after 5 minutes and traveled to 3029 /3031 North 55th Street – lower, Milwaukee, WI. After a brief stop at 3029 /3031 North 55th Street – lower, Milwaukee, WI the vehicle traveled to 4929 West Villard Street, Milwaukee, WI, which is a Citgo Gas Station. This location was used during the controlled buy on February 10, 2022. The Nissan Altima was at the gas station for 3 minutes and returned to 5251 North 48th Street, Milwaukee, WI. During this time frame the DTO's previous drug customer telephone phone (414) 587-6004 was in contact with DAVIS's previous telephone (262) 888-3327.

The Nissan Altima left 5251 North 48th Street, Milwaukee, WI at approximately 1:35 p.m. and returned to 4711 North 89th Street, Milwaukee, WI.

180. Additionally on May 2, 2022, the 2021 Nissan Altima left 4711 North 89th Street, Milwaukee, WI at approximately 5:30 p.m. and was in traffic until approximately 6:17 p.m. when the vehicle stopped in the area of South 12th Street and West Walker Street. During this stop the DTO's previous drug customer telephone (414) 587-6004 was in contact with Lane's telephone (414) 539-8708. The vehicle was at the location for a short period of time and traveled to 3029 /3031 North 55th Street – lower, Milwaukee, WI arriving at approximately 6:45 p.m. The Nissan Altima left 3029 /3031 North 55th Street – lower, Milwaukee, WI at approximately 8:06 p.m. After several stops the Nissan Altima returned to PINKARD's residence, 4711 North 89th Street, Milwaukee, WI. Based on my training and experience, high level drug traffickers at the end of the day often times drop off any illegal items in their possession such as, but not limited to, drugs, guns, money, and other tools of the trade at a location to protect the items from law enforcement investigation and rival DTO's looking to rob competitors.

**b. May 3, 2022, connections to 2028 North 31st Street, Milwaukee, WI, 4711 North 89th Street, Milwaukee, WI, 3029 /3031 North 55th Street – lower, Milwaukee, WI, and 5251 North 48th Street, Milwaukee, WI**

181. On May 3, 2022, during the monitoring of the court authorized GPS unit on PINKARD's Nissan Altima, case agents observed what they believed to be a drug transaction take place at approximately 9:50 a.m. at the Discount Quick Mart and Gas Station located at 8334 West Appleton Avenue with PINKARD.

182. During surveillance, PINKARD contacted an unidentified middle-aged male white. The unidentified male arrived at the gas station in what appeared to be a black Chevrolet Malibu approximately 5 minutes before PINKARD. Case agents were unable to obtain the registration on the Chevrolet Malibu during the contact. The contact lasted approximately 10 minutes. At no

point did PINKARD purchase gas or merchandise from the store.  Further, PINKARD never exited his Nissan Altima during the contact.  PINKARD parked his Nissan Altima at the gas pumps in front of the black Chevrolet Malibu. Upon PINKARD's arrival the unidentified male contacted PINKARD and entered PINKARD's Nissan Altima.  After approximately 5 minutes the unidentified male exited PINKARD's Nissan Altima, and both left the area.  PINKARD returned to his residence at 4711 North 89th Street, Milwaukee, WI after the contact.  Based on my training, experience, and investigation into the DTO, this activity is consistent with illegal drug transaction.

183.    Case agents review the data collected from the court authorized GPS on the 2021 Nissan Altima being operated by PINKARD on May 3, 2022.  Upon review of the data the vehicle made over 40 stops between 7:50 a.m. and 11:30 p.m.  Further the data shows the 2021 Nissan Altima made multiple stops at locations known to the case agents.  The 2021 Nissan Altima made 10 stops at gas stations in the Milwaukee, WI area during this time frame.  The 2021 Nissan Altima made multiple stops at PINKARD's residence at 4711 North 89th Street, Milwaukee, WI during this time frame.  The 2021 Nissan Altima made at least five stops in the area of 3029 /3031 North 55th Street – lower, Milwaukee, WI during this time frame.  The 2021 Nissan Altima made multiple stops at 5251 North 48th Street, Milwaukee, WI during this time frame.  Case agents noted a stop at 2028 North 31st Street, Milwaukee, WI, the tire shop associated with DAVIS, at approximately 4:10 p.m. Case agents also reviewed court authorized electronic surveillance for the time frame when PINKARD stopped at 2028 North 31st Street, Milwaukee, WI.  Case agents learned the following cellular phones were also in the area of 2028 North 31st Street, Milwaukee, WI during this time frame – the DTO's previous drug customer telephone (414) 587-6004, GRAHAM's telephone (414) 345-7827 and DAVIS' previous telephone (262) 888-3327.    During the investigation DAVIS has been observed at the location.  Also, case agents conducted a controlled buy at the location on January 14, 2022.

184.     Case agents believe the GPS unit on the 2021 Nissan Altima was dislodged from the vehicle on May 6, 2022, in the area of Sherman Park Boulevard and Wright Street.  Broken parts from the GPS unit were located at the intersection.

   **c.  May 12, 2022, connections to 4458 North 67th Street, Milwaukee, 4711 North 89th Street, Milwaukee, WI, 3029 /3031 North 55th Street – lower, Milwaukee, WI, and 5251 North 48th Street, Milwaukee, WI**

185.     Case agents learned on May 12, 2022, PINKARD returned the 2021 Nissan Altima in exchange for a 2021 Honda CRV.  Between May 12, 2022, and June 13, 2022, case agents observed the Honda CRV being operated and maintained by PINKARD.  The Honda CRV was regularly parked at PINKARD's residence of 4711 North 89th Street, Milwaukee, WI.

186.     Between May 12, 2022, and June 13, 2022, case agents deployed a court authorized GPS unit on PINKARD's 2021 Honda CRV.  Case agents reviewed the data recovered from the GPS unit that was attached to the 2021 Honda CRV.

187.     The review of the GPS data shows the 2021 Honda CRV was averaging approximately 23 stops per day between June 6, 2022, and June 13, 2022.  During this time frame the GPS unit also document stops at multiple locations suspected to be used by the DTO.  The GPS unit showed at least 30 stops at PINKARD's residence, 4711 North 89th Street, Milwaukee, WI.  The GPS unit showed at least six stops to 5251 North 48th Street, Milwaukee, WI.  The GPS unit showed at least seven stops at DAVIS' residence, 4458 North 67th Street, Milwaukee.  The GPS unit showed at least six stops at 3029 /3031 North 55th Street – lower, Milwaukee, WI.  The GPS unit also showed multiple stops at gas stations in Milwaukee, WI, which is consistent with the DTO conducting drug transactions like the undercover drug buy with UC on February 10, 2022.

   **d.  June 9, 2022, connections to 4458 North 67th Street, Milwaukee, 4711 North 89th Street, Milwaukee, WI, and 5251 North 48th Street, Milwaukee, WI**

188.    Case agents conducted a review of the GPS unit on the 2021 Honda CRV from June 9, 2022.  On June 9, 2022, case agents conducted a controlled buy from the DTO.  During this day the 2021 Honda CRV operated by PINKARD made several notable stops and electronic surveillance had several important contacts.  Between 9:05 a.m. and 11:23 a.m. the DTO's previous drug customer telephone (414) 587-6004 was in contact with DAVIS' previous telephone (262) 888-3327 six times. Around 10:00 a.m. PINKARD traveled to 3803 South Brook Place in St. Francis, WI.  This residence is associated with Haramis.  During this time UC was making phone contact with the DTO's previous drug customer telephone (414) 587-6004.  PINKARD was observed leaving the area by case agents.  Due to erratic driving patterns by PINKARD case agents were unable to follow but monitored the GPS unit.  The GPS unit showed PINKARD traveled to DAVIS' residence at 4458 North 67th Street, Milwaukee and arrived at 11:26 a.m., shortly after the last contact between the DTO's previous drug customer telephone (414) 587-6004 and DAVIS' previous telephone (262) 888-3327.  Based on previous UC controlled buys PINKARD and DAVIS would have electronical and physical contact during the operation.  PINKARD left 4458 North 67th Street, Milwaukee and traveled to 5251 North 48th Street, Milwaukee, WI.  PINKARD was at the 5251 North 48th Street, Milwaukee, WI for approximately 10 minutes.  PINKARD left 5251 North 48th Street, Milwaukee, WI and returned to DAVIS' residence, 4458 North 67th Street, Milwaukee at 12:16 pm.  PINKARD returned to his residence at 4711 North 89th Street, Milwaukee, WI during the time that the controlled buy was taking place with DOUGHTY.  Case agents determined PINKARD coordinated the controlled buy with UC and DOUGHTY.  Once the controlled buy was coordinated PINKARD coordinated with Haramis' telephone (224) 601-4290 and DOUGHTY to transport the controlled substance.    Between 11:40 a.m. and 11:39 p.m. the DTO's previous drug customer telephone (414) 587-6004 was in contact with DAVIS' previous telephone (262) 888-3327 ten times.

**H. LOCATIONS FOR DAVIS DTO, 4458 NORTH 67TH STREET, MILWAUKEE, WI, 2028 NORTH 31ST STREET, MILWAUKEE, WI, 4711 NORTH 89TH STREET, MILWAUKEE, WI, 3029 /3031 North 55th Street – lower, Milwaukee, WI, 3057A NORTH 52ND STREET, MILWAUKEE, WI, 5251 NORTH 48TH STREET, MILWAUKEE, WI, AND 2720 EAST EDGERTON AVENUE APARTMENT #6, CUDAHY, WI**

a. **James DAVIS residence – 4458 North 67th Street, Milwaukee**.

189.     During the course of the investigation case agents developed 4458 North 67th Street, Milwaukee, WI as the primary address for DAVIS.  Case agents believe DAVIS lives at the residence with his girlfriend, Lynesha Craig.  During the controlled buy on January 27, 2022, case agents observed DAVIS, PINKARD, and GRAHAM at 4458 North 67th Street, Milwaukee, WI. While at 4458 North 67th Street, Milwaukee, WI case agents observed PINKARD placing an item underneath the hood in the engine compartment of the Ford Fusion used by the DTO to deliver the controlled substance.  Once at the meet location in Racine, case agents observed GRAHAM retrieve the controlled substance from the engine compartment of the Ford Fusion just prior to the controlled buy taking place.

190.     On May 4, 2022, case agents observed DAVIS and PINKARD arrive at 4458 North 67th Street, Milwaukee, WI in separate rental vehicles at approximately 9:20 am.  Both DAVIS and PINKARD entered the residence.  At approximately 10:00 am PINKARD was seen leaving the residence carrying what was believed to be a grocery bag.  As described above, based on training and experience case agents know often times people who traffic in controlled substance will use grocery bags to transport controlled substance, US currency and or other drug related paraphernalia.

191.     On June 9, 2022, case agents conducted a DEA controlled buy from the DTO's previous drug customer phone (414) 587-6004.  UC believed he/she was in communication with PINKARD.  During the time of the coordination of the controlled buy case agents reviewed GPS

records for PINKARD's rental vehicle 2021 Honda CRV and phone records of the DTO's previous

drug customer telephone (414) 587-6004.   The DTO's previous drug customer phone (414) 587-

6004 was in contact with DAVIS' previous telephone (262) 888-3327.   Further during the time

frame just before the controlled buy took place, the court authorized GPS unit on PINKARD'S

vehicle was at DAVIS' residence 4458 North 67th Street, Milwaukee, WI.

192.     During the course of the investigation case agents conducted routine checks and

surveillance on DAVIS's residence at 4458 North 67th Street, Milwaukee, WI.  Case agents noted

DAVIS was regularly seen using the residence.   On September 6, 2022, case agents observed

DAVIS arrive at 4458 North 67th Street, Milwaukee, WI in a rental vehicle parking in the driveway.

DAVIS exited the vehicle and entered 4458 North 67th Street, Milwaukee, WI.

193.     During the investigation of the DTO case agents reviewed law enforcement data

base in an attempt to locate an address for DAVIS.  During the search case agents found DAVIS

listed 2030 North 31st Street as his address with Department of Transportation.   Also, upon

reviewing Wisconsin Circuit Court Access, Racine County Case 2022CF126, case agents found

DAVIS was arrested in Racine, WI on January 28, 2022, and used 2030 North 31st Street,

Milwaukee, WI as his address with the court.  Case agents reviewed the Milwaukee City Assessor

website, which did not locate a valid address for 2030 North 31st Street.   However, case agents

located a valid address for 2028 North 31st Street, Milwaukee, WI, which is a business property,

an auto and body repair shop, with the owner of the property being Peggy Ware.  Based on the

investigation in this DTO and review of law enforcement databases, case agents learned Peggy

Ware is James DAVIS's mother.  It should be noted 2028 North 31st Street, Milwaukee, WI is

listed as a business property.  During the investigation case agents observed DAVIS at 2028 North

31st Street, Milwaukee, WI on multiple occasion but his rental vehicles were generally located at

4458 North 67th Street, Milwaukee, WI overnight.   Based on my training and experience people

who traffic in illegal controlled substances, like DAVIS, often will attempt to hide their permeant location from law enforcement to elude detection and arrest.

> **b.** **Tire Shop associated with James DAVIS – 2028 North 31st Street, Milwaukee, WI**

194.    Case agents learned 2028 North 31st Street, Milwaukee, WI was a location used by the DTO based on records related to DAVIS, controlled buys, and surveillance of case agents.  As previously noted, James DAVIS used 2030 North 31st Street as a residence address and the Milwaukee City Assessor records only have 2028 North 31st Street, Milwaukee, WI is a business property, owned by Peggy Ware.  As previously noted, case agents learned James DAVIS is Peggy Ware's son.

195.    During the investigation case agents conducted a controlled buy with the DTO on January 14, 2022.  During the controlled buy DAVIS set up the predetermined meet location at 2030 North 31st Street, which actually 2028 North 31st Street, Milwaukee, WI.  During the controlled buy DAVIS arrived at the location in a rental vehicle before case agents were set up. During the controlled buy case agents observed a second car arrive at the location which was identified as a 2013 Hyundai Sonata registered to Shakayla Prince of 4711 North 89th Street, Milwaukee, WI, Pinkard's residence. Case agents believe the second car was PINKARD based on phone records which indicated DAVIS was contacting the DTO's old drug costumer telephone (414) 840-9759 and the connection to the vehicle and PINKARD's residence.  The CS purchased 25 grams of controlled substances from in front of 2028 North 31st Street, Milwaukee, WI.  The controlled buy took place on the street.  After the controlled buy was completed DAVIS and his other DTO member left the area.

196.    During the investigation case agents checked the records with WE Energies and determined 2030 North 31st Street, Milwaukee, WI and 2028 North 31st Street, Milwaukee, WI are

the same property. The energy service for 2030 North 31st Street has been inactive since 1982. Currently the property is registered with WE Energies as 2028 North 31st Street, Milwaukee, WI with the service listed to Darryl Ware since February 2013. Law enforcement databases reviewed by case agents indicated Darryl Ware is married to Peggy Ware and is James DAVIS' stepfather. Based on my training and experience in conducting investigations into DTO it is common for the members to create confusion with locations associated with the trafficker, by having properties and/or utilities in friends and family members names.

197. Based on the findings at 2028 North 31st Street, Milwaukee, WI case agents conducted surveillance on the location. During the month of March 2022 case agents conducted random surveillance at the location. At no point did the build appear to be operating a business. Further on March 2, 2022, mid-morning case agents followed DAVIS from his residence, 4458 North 67th Street, Milwaukee, WI to 2028 North 31st Street, Milwaukee, WI. Once at 2028 North 31st Street, Milwaukee, WI case agents observed DAVIS contact Darryl Ware outside of the building. Darryl Ware was identified using his Wisconsin DOT photos. After a short contact DAVIS left the area. Case agents attempted to follow DAVIS but due to erratic driving case agents lost DAVIS. Case agents were able to set up surveillance on Darryl Ware who made several stops around Milwaukee and returned to 2028 North 31st Street, Milwaukee, WI multiple times; however, Darryl Ware never enter the building of 2028 North 31st Street, Milwaukee, WI, and it appeared no business was actually being conducted at 2028 North 31st Street, Milwaukee, WI during this time.

198. During the investigation case agents conducted an interview with a Source of Information (SOI). SOI voluntarily shared information related to DAVIS and the commercial property at 2028 North 31st Street, Milwaukee, WI. The SOI indicated he/she provided DAVIS with 4 ounces of cocaine on multiple occasions during the year of 2021. Further SOI stated he/she

was aware that DAVIS and his "dad" had a "tire shop" that they conducted illegal business at. SOI did not know the exact address but gave the general area of 2028 North 31st Street, Milwaukee, WI. SOI also indicated DAVIS' "dad" was involved in the trafficking of controlled substances.

199.     SOI's information is credible and reliable because SOI has given information concerning individuals involved in illegal activities, which has been independently verified through this investigation. SOI cooperated with law enforcement in exchange for consideration on felony drug and firearm offenses. SOI has prior adult felony convictions for Attempted Armed Robbery, Bail Jumping, Manufacture/Delivery Cocaine, Fleeing and Hit and Run Causing Injury.

200.     During the review of the court authorized GPS tracker on PINKARDS Honda CRV, case agents noted the vehicle was in the area of 2028 North 31st Street, Milwaukee, WI on June 12, 2022, at approximately 1:27 p.m.

201.     During the investigation case agents observed DAVIS at 2028 North 31st Street, Milwaukee, WI on multiple occasion but his rental vehicles were generally located at 4458 North 67th Street, Milwaukee overnight. Based on my training and experience with DTO, members of DTO will attempt to hide their permeant location from law enforcement to elude detection and arrest. Further, DTO members will often use multiple locations to store tools of their criminal operations including money, controlled substance, and drug paraphernalia.

### c.   Juiquin PINKARD residence – 4711 North 89th Street, Milwaukee, WI

202.     During the course of the investigation case agents identified 4711 North 89th Street, Milwaukee, WI as the primary residence for PINKARD. During the controlled buy from the DTO on January 14, 2022, a 2013 Hyundai Sonata with Wisconsin license plate AHG4155 delivered the heroin to DAVIS. Upon checking the registration with Wisconsin DOT case agents learned the vehicle was registered to Shakayla Prince at 4711 North 89th Street, Milwaukee, WI. Through

phone records case agents found Prince was a top contact for PINKARD's telephone (414) 748-5568.

203.    On February 10, 2022, case agents conducted a controlled buy from the DTO. During the controlled buy PINKARD arrived operating a silver 2021 Volkswagen Jetta rental car. Case agents lost sight of the vehicle after the controlled buy.  During the course of the next month case agents conducted surveillance on the residence at 4711 North 89th Street, Milwaukee, WI.  In February 2022 case agents observed PINKARD's rental vehicle, 2021 Volkswagen, parked on the property of 4711 North 89th Street, Milwaukee, WI.

204.    On March 30, 2022, case agents conducted a garbage pull at 4711 North 89th Street, Milwaukee, WI.  During the collection and review of garbage associated with 4711 North 89th Street, Milwaukee, WI case agents recovered the rental agreement from Avis / Budget Rent a Car related to the 2021 Volkswagen.  The vehicle was rented by Marquist DAVIS who is an associate that rented multiple vehicles for PINKARD as previously discussed.

205.    During the course of the investigation case agents conducted court authorized electronic surveillance of PINKARD's telephone (414) 748-5568 and the DTO's previous drug customer phone (414) 587-6004.  Upon review of the court authorized electronic surveillance, case agents found PINKARD's telephone (414) 748-5568 and the DTO's previous drug customer phone (414) 587-6004 were in the area of 4711 North 89th Street, Milwaukee, WI on a regular basis, including overnight, consistent with PINKARD residing at the location.

206.    Case agents also conducted physical surveillance on 4711 North 89th Street, Milwaukee, WI on a regular basis between March 2022 through September 2022.  Case agents regularly observed PINKARD use the front door to 4711 North 89th Street, Milwaukee, WI. Further case agents regularly observed different rental vehicles parked in front of 4711 North 89th Street, Milwaukee, WI.  The rental vehicles were either rented by PINKARD or Marquist DAVIS.

PINKARD has been observed driving multiple rental vehicles from 4711 North 89th Street, Milwaukee, WI.

207.    On June 9, 2022, case agents conducted a controlled buy from the DTO. Based on electronic and physical surveillance, the DTO sent DOUGHTY to the meet location to conduct the transaction. Upon completion of the controlled buy, DOUGHTY was followed by case agents and observed returning directly from the transaction to 4711 North 89th Street, Milwaukee, WI. While at 4711 North 89th Street, Milwaukee, WI case agents observed DOUGHTY walk into the residence from the front door holding a large amount of United States currency suspected to be DEA funds from the controlled buy. After several minutes DOUGHTY and Haramis exited 4711 North 89th Street, Milwaukee, WI and left the area.

208.    On August 8, 2022, I was conducting surveillance on 4711 North 89th Street, Milwaukee, WI. At this time PINKARD's 2021 Mazda CX5 rental vehicle was park in front of the residence. At approximately 1:05 pm I observed PINKARD and HARAMIS exit the front door. Both PINKARD and Haramis entered the 2021 Mazda CX5. While walking to the vehicle PINKARD was carrying a backpack which he placed in the vehicle. Based on my training, experience, and investigation into this DTO, I know that members of DTOs often use backpacks to transport items such as but not limited to controlled substances, United States currency, firearms, digital scales, packaging paraphernalia and other documents.

209.    On August 3, 2022, case agents checked the records of WE Energies and found the service for 4711 North 89th Street, Milwaukee, WI is listed under Marquist DAVIS since March 2022. Case agents believe these records as they are updated on a regular basis and found to be accurate in the past. Further case agents found during the investigation that Marquist DAVIS was renting vehicles for PINKARD.

210.    On December 14, 2022, case agents observed PINAKRD's black 2023 Mazda CX 50 SUV, with Wisconsin license plate ASE4172 and VIN 7MMVABCM3PN123589 parked to the rear of 4711 North 89th Street, Milwaukee, WI, outside next to the garage. Review of DOT records indicated the Mazda CX is registered to PINARK for the location 4711 North 89th Street, Milwaukee, Wisconsin, with a lien holder of JP Morgan/Chase Bank.

211.    Case agents also observed PINKARD's Mazda CX on December 20, 2022, parked in front of 4711 North 89th Street, Milwaukee, WI. Case agents also observed PINKARD driving the Mazda CX that same day, including using the Mazda CX during the undercover controlled buy.

### d. Residence Associated with Juiquin PINKARD – 3029 /3031 North 55th Street – lower, Milwaukee, WI

212.    During the investigation case agents developed the address at 3029 /3031 North 55th Street – lower, Milwaukee, WI as a location associated with the DTO, specifically PINKARD. During the investigation court authorized electronic surveillance was used to assist with identifying target locations for the DTO. Case agents monitored court authorized electronic surveillance from March 2022 to May 2022. During this time frame the DTO's previous drug customer telephone (414) 587-6004 would show in the area of 3029 /3031 North 55th Street – lower, Milwaukee, WI. Also, during this time PINKARD'S telephone (414) 748-5568 would also show in the area of 3029 /3031 North 55th Street – lower, Milwaukee, WI. Based on the radius of the GPS locations case agents could not identify the exact location.

213.    Case agents used a court authorized GPS tracking unit on PINKARD's 2021 Nissan rental vehicle in the beginning of May 2022. Upon reviewing the data from the GPS unit case agents developed the location at 3029 /3031 North 55th Street – lower, Milwaukee, WI. On May 3, 2022, the GPS unit on PINKARD'S vehicle made at least 4 stops at the location between 9:00

a.m. and 7:00 p.m. Also, on this date PINKARD'S vehicle made 11 stops at gas stations throughout the Milwaukee area. Based on my training experience, and investigation into this DTO, gas stations are a common location for drug traffickers to conduct the illegal business, especially when multiple stops occur for one day.

214.     Case agent monitored the GPS unit on PINKARD's vehicle on May 3, 2022. At approximately 9:17 a.m. PINKARD's vehicle arrived at 3029 /3031 North 55th Street – lower, Milwaukee, WI. PINKARD'S vehicle left the area before case agents could arrive on scene. At approximately 9:36 a.m. PINKARD returned to his residence at 4711 North 89th Street, Milwaukee, WI. Case agents traveled to the area of 4711 North 89th Street, Milwaukee, WI to conduct surveillance on PINKARD. At approximately 9:42 a.m. PINKARD traveled in his 2021 Nissan rental to the Discount Quick Mart gas station at 8334 W. Appleton Avenue. While at the gas station case agents observed PINKARD contact an unidentified male white. During the contact PINKARD never exited his vehicle. The unidentified male approached PINKARD's vehicle and entered the passenger side door. The unidentified male was in PINKARD's vehicle for several minute and then exited. The unidentified male returned to his vehicle and left the area. PINKARD never exited his vehicle and did not conduct any official business with the gas station. PINKARD left the gas station and return to 4711 North 89th Street, Milwaukee, WI. Based on my training and experience, this conduct was consistent with a drug transaction between PINKARD and the unidentified male.

215.     Case agents continued to monitor the GPS unit on PINKARD'S vehicle. Starting at 1:30 p.m. and going until 4:10 p.m. PINKARD's 2021 Nissan stopped at five gas stations. After the last stop at the gas station located at West Beecher Street and South 6th Street approximately 4:12 p.m., PINKARD traveled to 2028 North 31st Street, Milwaukee, WI, the tire shop associated with DAVIS. After leaving 2028 North 31st Street, Milwaukee, WI, PINKARD traveled back to

3029 /3031 North 55th Street – lower, Milwaukee, WI. PINKARD'S vehicle was at the location for approximately 5 minutes and left the area returning to his residence at 4711 North 89th Street, Milwaukee, WI.

216. On May 4, 2022, case agents monitored the GPS unit on PINKARD's vehicle. At approximately 1:04 p.m. PINKARD's vehicle was at 5251 North 48th Street, Milwaukee, WI. PINKARD'S vehicle left the location and traveled to 3029 /3031 North 55th Street – lower, Milwaukee, WI arriving at 1:13 p.m. PINKARD was at 3029 /3031 North 55th Street – lower, Milwaukee, WI for approximately 10 minutes and left the residence. PINKARD's vehicle traveled to 4939 W. Villard Avenue, Milwaukee, WI a Citgo gas station. PINKARD's vehicle was at the Citgo gas station for three minutes. After leaving the Citgo Gas Station PINKARD returned to 5251 North 48th Street, Milwaukee, WI. PINKARD was at the location for approximately ten minutes. PINKARD then returned to 4711 North 89th Street, Milwaukee, WI. The Citgo gas station at 4939 W. Villard Avenue, Milwaukee, WI was used by the DTO during the controlled buy on February 10, 2022. Further the location is one block from 5251 North 48th Street, Milwaukee, WI. Case agents believe the DTO uses the Citgo gas station to conduct their drug trafficking business. Your affiant states based on training and experience in conducting illegal narcotics investigations people who traffic in illegal controlled substance will often use multiple locations. Some DTO's will keep the illegal controlled substances at a different location than the drug proceeds. This is done to protect the DTO from law enforcement investigation and rival drug traffickers looking rob their competitors.

**e. LaJuan GRAHAM residence – 3057A North 52nd Street, Milwaukee, WI**

217. During the course of the investigation case agents identified 3057A North 52nd Street, Milwaukee, WI as the primary residence for GRAHAM. Case agents believe GRAHAM

lives at the residence with his girlfriend Ashley Woods. Case agents checked law enforcement data base and identified GRAHAM using 3057A North 52nd Street, Milwaukee, WI as his address.

218. During the investigation between February 2022 and March 2022 case agents found GRAHAM was working third shift in Saukville, WI. Due to the findings case agents located GRAHAM'S vehicle at Charter Steel in Saukville, WI. On March 2, 2022, GRAHAM was followed from Charter Steel to his residence at 3057A North 52nd Street, Milwaukee, WI. GRAHAM parked his vehicle behind the residence and used the back door of 3057A North 52nd Street, Milwaukee, WI to gain entry.

219. During the investigation, on January 27, 2022, GRAHAM handed UC the controlled substance during the controlled. Further case agents learned GRAHAM was making cash deposits into his account at Educator's Credit Union. Case agents obtained records from Educator's Credit Union which listed 3057A North 52nd Street, Milwaukee, WI as GRAHAM home address. The cash deposits were for similar amounts related to the cost of vehicles rented by GRAHAM but were then operated by DAVIS. Case agents believed DAVIS was providing GRAHAM cash from drug transactions to deposit into his account at Educator's Credit Union to use to pay for rental cars used by the DTO.

220. Case agents also reviewed Wisconsin Circuit Court Access, which had two recent traffic violation for GRAHAM from June 27, 2022. GRAHAM provided the address 3057A North 52nd Street, Milwaukee, WI as his residence on the court record.

221. Case agents believe GRAHAM demonstrated that he is part of the DTO as he conducted a hand-to-hand drug transaction with UC on January 27, 2022. Further GRAHAM has continually deposit drug proceeds into a bank in order to rent vehicles from Avis / Budget Rent a Car for DAVIS. DAVIS then used these rentals to conduct his drug trafficking business with

PINKARD and other DTO members. Case agents confirmed this information with records collected from Avis / Budget Rent a Car and Educator Credit Union.

### f. DTO's location - 5251 North 48th Street, Milwaukee, WI

222.    Case agents developed the address at 5251 North 48th Street, Milwaukee, WI based on the controlled buy on February 10, 2022. During the communications between the DTO's previous drug custom telephone (414) 840-9759 and UC, UC was told to meet at the Citgo Gas Station at 49th Street and West Villard Street. The DTO's previous drug custom telephone (414) 840-9759 indicated that the controlled substance had to be picked up before the deal could happen. At this time case agents were unaware of the residence at 5251 North 48th Street, Milwaukee, WI which is less than a block from the Citgo gas station. During the controlled buy PINKARD arrived and contacted UC. The deal was extremely short, and PINKARD fled the area after the transaction was complete. Case agents attempted to follow PINKARD, but lost sight of PINKARD bases on erratic driving patterns.

223.    Upon reviewing law enforcement data base case agents located the address at 5251 North 48th Street, Milwaukee, WI being associated with PINKARD. Based on identifying the location case agents conducted surveillance on the residence. As brief described previously, on March 8, 2022, case agents were conducting surveillance on 5251 North 48th Street, Milwaukee, WI. At approximately 1:34 p.m. case agents observed the Volkswagen rental car operated by PINKARD during the controlled buy on February 10, 2022, driving in the area. While watching PINKARD's vehicle, case agents observed the vehicle drive past case agents' location and slow down as if PINKARD was looking into case agents' vehicle. Case agents repositioned the vehicle and passed PINKARD's Volkswagen in the area of West Villard Street and North 48th Street. At this point case agents confirmed PINKARD was the operator of the Volkswagen. Case agents stated after making eye contact PINKARD placed a mask over his face to conceal his identity.

While attempting to leave the area PINKARD attempted to follow case agents. After losing sight of PINKARD, case agents dove past 5251 North 48th Street, Milwaukee, WI and observed PINKARD'S vehicle parked in front of 5251 North 48th Street, Milwaukee, WI facing the wrong way in traffic. Case agents terminated surveillance at this point.

224. On March 30, 2022, case agents removed 3 bags of garbage from the alley to the rear of 5251 North 48th Street, Milwaukee, WI. Recovered from the garbage bags was prescription for Daven Pinkard at 5251 North 48th Street, Milwaukee, WI dated March 13, 2022. Also located were multiple plastic sandwich baggies primarily with the corners missing. Based on my training and experience in conducting investigations into DTO, case agents will often conduct what is refer to as a garbage pull from target residences. Often times the garbage will have evidence of the crime such as but not limited to packaging paraphernalia, records / documents related and even trace amounts of illegal controlled substances. The finding of plastic sandwich baggies with corners missing is indictive of people packaging illegal controlled substances for deliver.

225. During the month of May 2022, case agents deployed a court authorized GPS tracking unit on a 2021 Nissan Altima rental vehicle. The vehicle was rented by Marquist Davis but maintained and operated by PINKARD based on physical surveillance. Upon reviewing GPS data case agents observed the 2021 Nissan Altima made regular stops at 5251 North 48th Street, Milwaukee, WI from May 3, 2022 – May 4, 2022.

226. During the month of June 2022, case agents deployed a court authorized GPS tracking unit on a 2021 Honda CRV rental vehicle. The vehicle was rented and operated by PINKARD base on review of records and physical surveillance by case agents. The vehicle was regularly maintained at 4711 North 89th Street, Milwaukee, WI. During the review of the data collected from the GPS unit case agents observed the 2021 Honda CRV made regular stops at 5251 North 48th Street, Milwaukee, WI from June 9, 2022 – June 13, 2022.

### g. Brooke DOUGHTY residence – 2720 East Edgerton Avenue Apartment #6, Cudahy, WI

227.    During the investigation case agents identified 2720 East Edgerton Avenue Apartment #6, Cudahy, WI as the primary residence for DOUGHTY. Case agents believe DOUGHTY lives at the residence with several small children and her child's father, Haramis. Case agents checked law enforcement data base and confirmed DOUGHTY uses 2720 East Edgerton Avenue Apartment #6, Cudahy, WI. Case agents also found records of Haramis using 2720 East Edgerton Avenue Apartment #6, Cudahy, WI as a residence.

228.    During the investigation case agents learned of DOUGHTY during the undercover controlled buy on March 24, 2022. During the controlled buy, case agents monitored court authorized electronic surveillance of the DTO's previous drug customer telephone (414) 587-6004 and PINKARD's telephone (414) 748-5568. Based on the court authorized electronic surveillance of the DTO's previous drug customer phone (414) 587-6004 and PINKARD's telephone (414) 748-5568, case agents believed PINKARD was in possession of both phones.

229.    As previously noted, on March 24, 2022, prior to the deal being arranged in the morning, the DTO's previous drug customer telephone (414) 587-6004 was in contact with DAVIS' telephone (262) 888-3327 three times, GRAHAM's telephone (414) 345-7827 five times and Haramis' telephone (224) 601-4290 two times. After 11:30 a.m. and the deal being scheduled, Haramis' telephone (224) 601-4290 and the DTO's drug customer telephone (414) 587-6004 had eight contacts, while the DTO was supposed to be heading to meet UC. This was between 11:38 a.m. and 12:50 p.m. After 12:50 p.m. PINKARD's telephone (414) 748-5568 contacted DOUGHTY's telephone (414) 719-1574 five times. Haramis' telephone (224) 601-4290 and DOUGHTY's telephone (414) 719-1574 made 41 contacts on March 24, 2022, between 10:09 a.m. and 1:53 p.m., 18 voice calls and 23 text messages. Between 12:20 p.m. and 1:53 p.m.

DOUGHTY's telephone (414) 719-1574 did not have any contact with Haramis but five contacts with PINKARD's telephone (414) 748-5568.

230.     Also, during the March 24, 2022, controlled buy the DTO's drug customer phone (414) 587-6004 indicated it was in the area of 13th Street and Layton Avenue.  The location is in close proximity to DOUGHTY's residence of 2720 East Edgerton Avenue Apartment #6, Cudahy, WI.  During the March 24, 2022, controlled buy, the DTO sent DOUGHTY with the controlled substances to the meet location, were DOUGHTY conducted the drug transaction with UC.  DOUGHTY was operating a black Audi A4 with Wisconsin license plate AMK3977.  After the completion of the transaction case agents attempted to follow DOUGHTY; however, case agents lost DOUGHTY at a gas station in the area of 13th Street and Layton Avenue.

231.     The following day, after identifying DOUGHTY through Wisconsin DOT records, case agents checked her listed residence at 2720 East Edgerton Avenue Apartment #6, Cudahy, WI and located her black Audi A4 parked in front of the residence.  During the next week case agents conducted surveillance on the residence at 2720 East Edgerton Avenue Apartment #6, Cudahy, WI.  Case agents observed DOUGHTY leaving 2720 East Edgerton Avenue Apartment #6, Cudahy, WI through the front door.  Further DOUGHTY was observed leaving 2720 East Edgerton Avenue Apartment #6, Cudahy, WI in the black Audi A4.

232.     Through analysis of cellular phone records of Haramis telephone (224) 601-4290 and DOUGHTY's telephone (414) 719-1574 case agents identified Haramis to be a top contact for DOUGHTY.  Further case agents reviewed records of Wisconsin Circuit Court Records (CCAP) Milwaukee County Case 2022FA002242, in which DOUGHTY and HARAMIS had a paternity case together.  The case was started on April 26, 2022, and the address on records for DOUGHTY was 2720 East Edgerton Avenue Apartment #6, Cudahy, WI.  Haramis listed his address at 3803 South Brook Place, Saint Francis, WI.

233.    Case agents also reviewed another Milwaukee County Case 2022FA003151, in which Haramis was a respondent to an injunction.  As of June 9, 2022, HARAMIS listed his address as 2720 East Edgerton, Cudahy, WI consistent with him residing with DOUGHTY as 2720 East Edgerton Avenue Apartment #6, Cudahy, WI.

234.    Case agents conducted a controlled buy on June 9, 2022.  During this controlled buy UC contacted the DTO's previous drug customer telephone (414) 587-6004 to coordinate the deal.  During this time case agents conducted surveillance on PINKARD and observed he traveled to 3803 South Brook Place, the address Haramis had provided as his residence in Milwaukee County Case 2022FA002242. During the controlled buy on June 9, 2022, the DTO's previous drug customer phone (414) 587-6004 was in contact with Haramis' telephone (224) 601-4290. Haramis' telephone (224) 601-4290 was in contact with DOUGHTY's telephone (414) 719-1574. Once the location of the transaction was set, case agents set up surveillance on the location. At this time case agents did not know which member of the DTO was going to conduct the transaction with UC.

235.    During the controlled buy case agents observed DOUGHTY arrive to meet UC in a black Audi A4 with Wisconsin license plate ALY6784.  The plate was different from the previous Audi A4 used by DOUGHTY but was confirmed to be registered to Steve Doughty, who is believed to be related to DOUGHTY.  Based on my training and experience, it is common practice for people who traffic in illegal controlled substance to use different vehicles and license plates to deceive and elude law enforcement investigations.  Additionally, members of DTO will have family members or friends register vehicles used by DTO members in an attempt to deceive and elude law enforcement investigations.

236.    During the June 9, 2022, drug buy DOUGHTY and UC exchanged the controlled substances and buy money.  After the transaction DOUGHTY left the area.  Case agents were able

to conduct surveillance on DOUGHTY after the transaction. At this time case agents were also conducting surveillance on PINKARD'S residence at 4711 North 89th Street, Milwaukee, WI. Based on seeing DOUGHTY make the delivery case agents set up surveillance her residence at 2720 East Edgerton Avenue Apartment #6, Cudahy, WI.

237. Following the drug transaction, DOUGHTY was observed traveling directly to 4711 North 89th Street, Milwaukee, WI. Once at PINKARD's residence of 4711 North 89th Street, Milwaukee, WI, DOUGHTY exited her vehicle and walked to the front door of the residence. Case agents observed DOUGHTY holding a large amount of United State currency which was believed to be buy money. DOUGHTY entered 4711 North 89th Street, Milwaukee, WI with the money. After several minutes inside the residence DOUGHTY exited the residence with Haramis and a small child. DOUGHTY, Haramis, and the small child left the area in the Audi A4. Case agents followed DOUGHTY and Haramis back to the apartment building of 2720 East Edgerton Avenue Apartment #6, Cudahy, WI where they all entered the building.

**I. CRIMINAL HISTORY OF DTO TARGET SUBJECTS**

**a. James DAVIS**

238. Upon review of DAVIS' criminal history, case agents learned DAVIS is a convicted felon and is disqualified from possessing firearms. DAVIS' criminal history dates from August 20, 1995, until the current date. DAVIS criminal history documents the following crimes: Resisting / Obstructing Law Enforcement, Burglary, Use of Dangerous Weapon, Illegal Drug Activity, Manufacturing / Deliver of Cocaine 1-5 grams, Failure to Appear, Possession with Intent to Deliver Cocaine 5-15 grams, Fleeing / Eluding law enforcement, Bail Jumping, Traffic Offenses, Battery / Domestic Violence, Criminal Damage to Property, Trespassing to Dwelling, Possession of Cocaine, Possession of Firearm by Felon, 2nd Degree Recklessly Endangering Safety, Substantial Battery and Intimidation of Victim with Threat of Force. The above listed

crimes documented for DAVIS do not reflect the actual convictions, as cases often are settled with plea agreements where original charges can be dismissed or changed as part of the plea agreement.

### b. Juiquin PINKARD

239. Upon review of PINKARD's criminal history, case agents learned PINKARD is a convicted felon and is disqualified from possessing firearms. PINKARDS criminal history dates from May 5, 1998, until the current date. PINKARD's criminal history documents the following crimes: Retail Theft, Robbery, Battery, Receiving Stolen Property, Resisting / Obstructing Law Enforcement, Illegal Drug Activity, Manufacturing / Delivery of Cocaine 1-5 grams, Armed Robbery – Use of Weapon, Possession of Marijuana, Bail Jumping, Possession of Firearm by Felon, Possession of Marijuana – Repeat Drug Offender, Disorderly Conduct, Possession with Intent to Deliver Cocaine 1 gram, Failure to Comply with Officer at Custody, Fleeing / Eluding Law Enforcement, and Aggravated Fleeing Police. The above listed crimes for PINKARD do not reflect all convictions as cases are often settled with plea agreements where original charges can be dismissed or changed as part of the plea agreement.

240. PINKARD is currently on supervised released in the Eastern District of Wisconsin regarding case *United State v. Juiquin Pinkard*, 20-CR-41.

### c. LaJuan GRAHAM

241. Upon review of GRAHAM's criminal history, case agents learned GRAHAM is a convicted felon and is disqualified from possessing firearms. GRAHAM's criminal history dates from October 6, 1997, until the current date. GRAHAM's criminal history documents the following crimes: Burglary, Possession with Intent to Deliver Cocaine 1-5 grams, Possession with Intent to Deliver Marijuana 1-500 grams, Illegal Drug Activity, Disorderly Conduct, 2nd Degree Murder – Use of Dangerous Weapon, Possession of Marijuana 1-25 grams, and Resisting / Obstructing an Officer. The above listed crimes for GRAHAM do not reflect all convictions as

cases are often settled with plea agreements where original charges can be dismissed or changed as part of the plea agreement.

### d. Brooke DOUGHTY:

242.    Upon review of DOUGHTY's criminal history, case agents learned DOUGHTY had several felony arrests, but is not a convicted felon.  DOUGHTY's criminal history dates from June 6, 2009, until the current date.  DOUGHTY's criminal history documents the following crimes: Retail Theft, Resisting / Obstructing an Officer, Theft of Movable Property, Operating Motor Vehicle Without Owner Consent and Fleeing / Eluding Traffic Officer.  The above listed crimes for DOUGHTY do not reflect all convictions as cases are often settled with plea agreements where original charges can be dismissed or changed as part of the plea agreement.

### e. Desmond Haramis:

243.    Upon review of Haramis' criminal history, case agents learned Haramis was a convicted felon and is disqualified from possessing firearms.  Haramis' criminal history dates from June 2, 2007, until the current date.  Haramis' criminal history documents the following crimes: Vandalism, Robbery with Use of Force, Possession of Marijuana, Loitering / Prowling, Resisting / Obstructing Law Enforcement, Criminal Damage to Property – Domestic Abuse, Theft - Movable Property, Traffic Offenses, Battery – Domestic Abuse, and Domestic Abuse Restraining Order Violation.  The above listed crimes for Haramis do not reflect all convictions as cases are often settled with plea agreements where original charges can be dismissed or changed as part of the plea agreement.

### J.  Summaries of Respective Roles

### a.  James DAVIS

244.    As recounted in more detail above, DAVIS is the suspected source of supply of heroin and fentanyl for the DTO, which is then distributed by GRAHAM, PINKARD, and

DOUGHTY. DAVIS' telephone was in frequent contact with PINKARD and GRAHAM during periods when law enforcement was purchasing controlled substances from PINKARD and DOUGHTY and also when PINKARD was observed conducting suspected drug transaction in Milwaukee. Further PINKARD had physical contact with DAVIS prior to and following suspected drug transactions.

### b. Juiquin PINKARD

245.     As recounted in more detail above, PINKARD coordinated and distributed controlled substances during multiple controlled purchases with law enforcement, to include over 40 grams of fentanyl. He appears to utilize telephones, vehicles, and several residences for the DTO's drug trafficking. He appears to be sourced fentanyl by DAVIS., and then coordinates the distribution of that same fentanyl with DAVIS, GRAHAM, and DOUGHTY.

### c. LaJuan GRAHAM

246.     As recounted in more detail above, GRAHAM distributed controlled substances during the controlled with law enforcement on January 27, 2022. He also deposits drug proceeds into financial institutions and uses those funds to obtain rental vehicles for the DTO. He appears to be sourced cocaine by DAVIS and use the DTO's drug customer telephone to distribute to law enforcement on February 10, 2022.

### d. Brooke DOUGHTY

247.     As recounted in more detail above, DOUGHTY distributed controlled substances during the controlled with law enforcement on March 24, 2022, and June 9, 2022. She has used residences associated with other members of the DTO, having been observed by law enforcement at the same. She appears to be provided fentanyl by PERKINS which is sourced by DAVIS.

## IV.     TECHNICAL BACKGROUND

248.     Based on my training and experience, I know that Service Provider can collect historical and prospective cell-site data and historical and prospective E-911 Phase II data about the location of the **Target Cell Phone**, including by initiating a signal to determine the location of the **Target Cell Phone** on Service Provider's network or with such other reference points as may be reasonably available.

## Cell-Site Data

249.     In my training and experience, I have learned that the Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

250.     Based on my training and experience, I know that the Service Provider can collect cell-site data on a historical and prospective basis about the **Target Cell Phone**. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the

end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

### E-911 Phase II / GPS Location Data

251.    I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.

252.    As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.

253.    Affiant also knows that certain wireless providers, such as Service Provider, can provide precision location information, also known as estimated location records or historical handset location data, on both a historical and prospective basis. Each provider refers to its proprietary estimates of a cellular device's location differently. This information, however, is sometimes referred to as geolocation information (PING), Network Event Location System (NELOS) data, Global Positioning System (GPS) data, cell tower triangulation or trilateration, round-trip time, or real-time tool (RTT), per-call measurement data (PCMD), historical E911 data, or precision measurement information.

254.     Based on Affiant's training and experience, Affiant knows that Service Provider also can collect per-call measurement data, which Service Provider also refers to as the "real-time tool" ("RTT").  RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower.  This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

255.     Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the **Target Cell Phone** including by initiating a signal to determine the location of the **Target Cell Phone** on the Service Provider's network or with such other reference points as may be reasonably available.

## Pen-Trap Data

256.     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

## Subscriber Information

257.     Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business.

258.     In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify **Target Cell Phone'** user or users, the locations of that user or users, the patterns of that user or users, and may assist in the identification of other co-conspirators. A frequency analysis of the telephone communications between DAVIS, GRAHAM, PINKARD, DOUGHTY, and others unknown individuals is material, in that it can establish whether the calls from the **Target Cell Phone** are a deviation from their normal patterns of communication. The frequency analysis of the locations associated with the **Target Cell Phone** can establish whether the locations are deviations or consistent with normal patterns. This information is relevant to show whether DAVIS, GRAHAM, PINKARD, DOUGHTY, and others acted-in-concert, by establishing the nature and extent of their relationship, the existence and scope of the conspiracy, the pattern of their communications, their patterns of travel, and any deviations from those patterns.

259.     Case agents believe the DTO is using its call numbers to facilitate communications with known and unknown co-conspirators. Case agents further believe the DTO have made and will continue to make frequent visits to locations in which the DTO is using to store and

distribution narcotics and/or other evidence of the DTO's drug trafficking. Case agents believe that the historical and prospective monitoring of the **Target Cell Phone'** location will assist in identifying potential sources of supply, distributors, and locations associated with the DTO.  I believe the **Target Cell Phone**, whose service provider is Verizon Cellular ("Service Provider"), a wireless telephone service provider, continues to contain valuable information that could be used as evidence for the possible crimes money laundering, in violation of Title 18, United States Code, Section 1956(a)(1); use of a communication device in furtherance of drug trafficking, in violation of Title 21, United States Code, Section 843; distribution and possession with intent to distribute controlled substances and conspiracy to distribute and possess with the intent to distribute controlled substances, violations of Title 21, United States Code, Sections 841 and 846.

## V.    AUTHORIZATION REQUEST

260.    Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

261.    I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

262.    I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the **Target Cell Phone** on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The

government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

263. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice till February 2, 2023, pursuant to the Omnibus signed by Honorable Judge Nancy Joseph on February 4, 2022. This investigation is expected to remain covert at least until then, so disclosing the warrant would alert targets or subjects about the existence of a federal investigation. Case agents will continue to request the same notification deadline for all warrants in this investigation, so that the notifications can be coordinated or extended as necessary. A single notification date will reduce the administrative burden on case agents and the Court, minimize the risks of disclosure, and promote judicial economy. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **Target Cell Phone** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1).

264. As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

265. Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of

the requested warrant at any time in the day or night. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Cell Phone** outside of daytime hours.

**ATTACHMENT A**
**Property to Be Searched**
**Matter No. 2022R00039**

1.      Records and information associated with the cellular devices assigned International

Mobile Subscriber Identity (IMSI) 311480680692996, (referred to herein and in Attachment B as

"the **Target Cell Phone**"), that is in the custody or control of Verizon Cellular (referred to herein

and in Attachment B as the "Service Provider"), a wireless communications service provider that

is headquartered at 1095 Avenue of the Americas; New York, NY. 10036.


2.   Information about the location of **Target Cell Phone**, that is within the possession,

custody, or control of Verizon Cellular.


3.   **Target Cell Phone**.

**ATTACHMENT B**
**Particular Things to be Seized**
**Matter No. 2022R00039**

## I. Information to be Disclosed by the Service Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

   a. The following subscriber and historical information about the customers or subscribers associated with **Target Cell Phone** for the time period from December 27, 2022, to present:

   i. Assigned call number;
   ii. Names (including subscriber names, user names, and screen names);
   iii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iv. Local and long-distance telephone connection records;
   v. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   vi. Length of service (including start date) and types of service utilized;
   vii. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

   viii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

   ix. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

2

x. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the **Target Cell Phone** including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received).

b. Information associated with each communication to and from the **Target Cell Phone** for a period of 30 days from the date of this warrant, including:

i. Assigned call number;

ii. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

iii. Source and destination telephone numbers;

iv. Date, time, and duration of communication; and

v. All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e., faces of the towers) to which the **Target Cell Phone** will connect at the beginning and end of each communication.

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the **Target Cell Phone**.

c. Information about the location of the **Target Cell Phone** for a period of 30 days, during all times of day and night. "Information about the location of Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the

location of the **Target Cell Phone** on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence and instrumentalities of violations of money laundering, in violation of Title 18, United States Code, Section 1956(a)(1); use of a communication device in furtherance of drug trafficking, in violation of Title 21, United States Code, Section 843; and illegal possession and distribution of controlled substances and conspiracy to do the same, in violation of and Title 21, Untied State Code Sections 841 and 846 involving James A. DAVIS, LaJuan J. GRAHAM, Juiquin PINKARD and Brooke DOUGHTY and other unknown individuals since August 1, 2021.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.